CROWN CORK & SEAL COMPANY, INC. and Clark Equipment Company, Plaintiffs,

v.

John C. DOCKERY, et al., Defendants.

No. 3:92CV00744.

United States District Court, M.D. North Carolina, Rockingham Division.

Feb. 7, 1995.

Robert J. Morris, Thomas N. Barefoot, Raleigh, Daniel W. Fouts, Greensboro, NC, for plaintiffs.

P. Wayne Robbins, Pinehurst, NC, Walter E. Brock, Jr., L. Neal Ellis, Jr., Elizabeth M. Powell, John Lewis Shaw, Raleigh, NC, R. Thompson Wright, Greensboro, NC, for defendants.

## MEMORANDUM OPINION

TILLEY, District Judge.

This action arises out of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). Specifically, Plaintiffs, Crown Cork & Seal Company, Inc. ("Crown Cork") and Clark Equipment Company ("Clark") have brought this action seeking, *inter alia*, contribution for response costs incurred by them and paid to the United States and a declaratory judgment that each defendant is jointly and severally liable to Plaintiffs for future necessary response costs. Defendants are some twenty parties, including (1) current owner-operators of the sites and (2) parties alleged to have arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment of hazardous substances. Defendants Deytens Shipyards, Inc. ("Detyens"), Braswell Services Group, Inc. ("Braswell"), and Tom Parsell Chevrolet, Inc. ("Parsell") have each filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6). For the reasons that follow, it is determined that this Court does not have personal jurisdiction over these defendants and the claims against each will be transferred to the United States District Court for the District of South Carolina.[1]

### I.

The facts, stated in a light most favorable to Plaintiffs, are as follows: during the mid-1970's and early 1980's, two parcels of real property in Richmond County, North Carolina, a sixteen (16) acre parcel located 1.6 miles southwest of Cordova ("Macon site") and a one (1) acre parcel of real property located nearly adjacent to the Macon site ("Dockery site") were used as waste disposal and oil recycling facilities. Waste oil, used solvents, and numerous other chemical wastes were delivered to the Macon and Dockery sites for treatment, processing, disposal, and recycling. In late 1983 and early 1984, the Environmental Protection Agency ("EPA"), pursuant to CERCLA, initiated removal actions in which it removed hazardous substances from both the Macon and Dockery sites. In 1986, the United States instituted a civil action against Crown Cork and Clark, alleging that there were continued and threatened releases of hazardous substances at the Macon and Dockery sites and that Crown Cork and Clark were liable under CERCLA for the response costs. In 1988, Crown Cork and Clark entered into an Administrative Order By Consent with the EPA in which both Crown Cork and Clark agreed to perform a Remedial Investigation and Feasibility Study ("RI/FS") of the Macon and Dockery sites. Crown Cork and Clark also agreed to reimburse the EPA for oversight of the RI/FS. As a result of the RI/FS, Crown Cork and Clark allegedly incurred necessary response costs consistent with the National Contingency Plan ("NCP").

Eventually, in 1989, Crown Cork and Clark, along with twelve other parties entered into a Consent Decree with the United States for all response costs incurred at the Macon and Dockery sites. Under the terms of the Consent Decree, Crown Cork and Clark each agreed to pay $600,000. Both

---

1. Because the Court finds that it has no personal jurisdiction over moving Defendants under Rule 12(b)(2), it will not address moving Defendants' motions to dismiss pursuant to Rule 12(b)(6).

Crown Cork and Clark have complied with the Consent Decree.

In 1992, the EPA issued a Unilateral Administrative Order to Crown Cork and Clark which required, *inter alia*, the performance of remedial design and remedial action ("RD/RA") at the Macon and Dockery sites consistent with the NCP and under EPA oversight. Crown Cork and Clark allegedly incurred costs and will continue to incur costs for performance of the RD/RA.

Crown Cork and Clark now seek contribution, pursuant to CERCLA, from some twenty defendants for their status as either (1) current owner-operators of the sites or (2) parties who allegedly arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment of hazardous substances. Specifically, Crown Cork and Clark seek contribution under 42 U.S.C. § 9613(f) for the costs incurred in compliance with the Consent Decree. In addition, Crown Cork and Clark seek to recover the RI/FS and RD/RA response costs pursuant to 42 U.S.C. § 9607(a). Finally, pursuant to 42 U.S.C. § 9613(g)(2), Crown Cork and Clark seek a declaratory judgment against all Defendants holding that each Defendant is jointly and severally liable to pay all of Plaintiffs' future necessary response costs consistent with the NCP.

Defendants Detyens, Braswell, and Parsell have each filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2). Specifically, each moving Defendant asserts that Crown Cork and Clark have not shown that moving Defendants purposefully directed any activity toward North Carolina such that sufficient minimum contacts exist between moving Defendants and North Carolina. In support of their position, each moving Defendant has submitted affidavits from the presidents of its respective corporations. These affidavits assert that the corporations were organized under the laws of South Carolina, that they have no offices or agents in North Carolina, that they do not and have not engaged in any business in North Carolina, and that they do not maintain any bank accounts, real estate, or other property in North Carolina.

## II.

When the Court's personal jurisdiction is challenged under Rule 12(b)(2), the plaintiff has the ultimate burden to prove the existence of jurisdiction by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989). In determining a motion to dismiss for lack of personal jurisdiction, the Court may either determine the motion on the basis of the pleadings and affidavits, postpone the decision and allow discovery, or hold an evidentiary hearing. *See Rich v. KIS California, Inc.*, 121 F.R.D. 254, 259 (M.D.N.C.1988); *see also Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2nd Cir.1981); *see also Combs*, 886 F.2d at 676. When the Court addresses the issue of personal jurisdiction on the basis of only the motion papers, legal memoranda, and the relevant allegations of a complaint, the plaintiff must only prove a prima facie case of personal jurisdiction. *See Combs*, 886 F.2d at 676; *see also Dowless v. Warren–Rupp Houdailles, Inc.*, 800 F.2d 1305, 1307 (4th Cir.1986); *see also Rich*, 121 F.R.D. at 259. In determining whether the plaintiff has established a prima facie case of personal jurisdiction, the Court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction. *See Combs*, 886 F.2d at 676; *see also Wolf v. Richmond County Hosp. Auth.*, 745 F.2d 904, 908 (4th Cir.1984), *cert. denied*, 474 U.S. 826, 106 S.Ct. 83, 88 L.Ed.2d 68 (1985).

The question of personal jurisdiction is answered through a two-step analysis. The court must determine whether the state's statutory authority confers jurisdiction, and if so, whether an exercise of jurisdiction complies with the federal constitutional standards of due process. *See Dowless*, 800 F.2d at 1306; *see also Vishay Intertechnology, Inc. v. Delta Int'l Corp.*, 696 F.2d 1062, 1064 (4th Cir.1982).[2]

---

**2.** The Court has found a case in this Circuit which holds that in actions where a federal court has federal question jurisdiction, a court need not look to the forum state's long-arm statute to

In addressing the first step, the statutory authority for personal jurisdiction in North Carolina is contained in the long-arm statute, North Carolina General Statues § 1–75.4. A clear mandate exists that the North Carolina long-arm statute be given a liberal construction, making available to the North Carolina courts "the full jurisdictional powers permissible under federal due process." *See Vishay*, 696 F.2d at 1065 (quoting *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 231 S.E.2d 629, 630 (1977)).

The long-arm statute provides that the courts of North Carolina have jurisdiction over "any action claiming injury to person or property within this State arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury either: [p]roducts, materials or thing processed, serviced or manufactured by the defendant were used or consumed, within this State in the ordinary course of business." N.C.Gen.Stat. § 1–75.4(4)(b). Under § 1–75.4(4)(b), the plaintiff must claim: (1) "injury to person or property" within North Carolina; (2) arising out of the defendant's acts or omissions outside the state; (3) at or about the time defendant's products were being used or consumed within North Carolina in the ordinary course of trade. *See Dowless*, 800 F.2d at 1307.

■ In this case, Crown Cork and Clark have established a prima facie case that § 1–75.4(4)(b) confers jurisdiction over each of the moving Defendants. First, Crown Cork and Clark's Complaint claims injury to two parcels of real property in Richmond County, North Carolina (the Macon and Dockery sites). Complaint at ¶ 31, 37, 43. Second, Crown Cork and Clark allege that the injury to the real property in North Carolina arose out of moving Defendants' actions outside North Carolina, namely moving Defendants' arrangement with C & M Oil for the disposal of waste oil. Complaint at ¶ 52; Daniel Hurst Dep. p. 15–26; James Chestnut Dep. p. 7–9. Finally, Clark Cork and Clark allege that about the time of the injury to the Macon and Dockery sites, moving Defendants' waste oil was being used or consumed there in the ordinary course of trade. Complaint at ¶ 29, 35; Hurst Dep. p. 15–26; Chestnut Dep. p. 7–9. Moving Defendants have failed to contradict Crown Cork and Clark's prima facie showing of these statutory requirements. Thus, Crown Cork and Clark have satisfied that the North Carolina long-arm statute authorizes jurisdiction on these facts.[3]

■ Once the plaintiff has satisfied that the state statutory authority confers jurisdiction, the inquiry moves on to determine whether an exercise of jurisdiction complies with the federal constitutional standards of due process. *See Dowless*, 800 F.2d at 1306; *see also Vishay*, 696 F.2d at 1064. The due process inquiry focuses on two parts. First, a non-resident defendant must have minimum contacts with the forum. The touchstone of the minimum contacts analysis is

---

answer the question of personal jurisdiction but, instead, should merely determine whether jurisdiction complies with the federal constitutional standards of due process. *See Allied Towing Corp. v. Great Eastern Petroleum Corp.*, 642 F.Supp. 1339 (E.D.Va.1986). In reaching this holding, the court in *Allied Towing* mainly relied on two Fifth Circuit decisions. *See Terry v. Raymond International, Inc.*, 658 F.2d 398, 402 (5th Cir.1981), *cert. denied*, 456 U.S. 928, 102 S.Ct. 1975, 72 L.Ed.2d 443 (1982); *Lapeyrouse v. Texaco, Inc.*, 693 F.2d 581, 585 (5th Cir.1982). However, both *Terry* and *Lapeyrouse* have since been overturned. *See Point Landing, Inc. v. Omni Capital International, Ltd.*, 795 F.2d 415 (5th Cir.1986); *see also Cable News Network v. Video Monitoring Services*, 723 F.Supp. 765 (N.D.Ga. 1989). As a result, the Court will decide the question of personal jurisdiction under the two-prong test as enunciated in *Dowless* and *Vishay*.

*See also Gkiafis v. Steamship Yiosonas*, 342 F.2d 546 (4th Cir.1965).

3. N.C.Gen.Stat. § 1–75.4(6)(b) also confers jurisdiction over moving Defendants in this case. § 1–75.4(6)(b) provides that the courts of North Carolina have jurisdiction over any action which arises out of "[a] claim to recover for any benefit derived by the defendant through the use, ownership, control or possession by the defendant of tangible property situated within this State either at the time of the first use, ownership, control or possession or at the time the action is commenced." Crown Cork and Clark allege that moving Defendants have derived benefit from the use of the Macon and Dockery sites by disposing of their waste oil there. In addition, Crown Cork and Clark's seek contribution from moving Defendants for the response costs incurred as a result of such disposal.

that a non-resident must engage in some activity purposefully directed toward the forum state. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla,* 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958); *International Shoe Co. v. Washington,* 326 U.S. 310, 326, 66 S.Ct. 154, 163, 90 L.Ed. 95 (1945). Second, the assertion of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *See Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184; *Woodson,* 444 U.S. at 292, 100 S.Ct. at 564; *Hanson,* 357 U.S. at 251, 78 S.Ct. at 1238; *International Shoe,* 326 U.S. at 326, 66 S.Ct. at 163.

Recently, in *Lesnick v. Hollingsworth & Vose Co.,* 35 F.3d 939 (4th Cir.1994), the Fourth Circuit articulated the test to be applied in considering whether a state has personal jurisdiction over a non-resident defendant. In *Lesnick,* the Fourth Circuit articulated a two-part test which should focus on whether (1) the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state; and (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice, taking into account such factors as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies. *Lesnick,* 35 F.3d at 945–46. The Fourth Circuit specifically emphasized that the most recent Supreme Court cases discussing personal jurisdiction support a narrow view of minimum contacts, "requiring purposeful activity on the part of the defendants to establish a meaningful contact with the forum state." *Id.* at 944. The court stated:

> To permit a state to assert jurisdiction over any person in the country whose product is sold in the state simply because

a person must expect that to happen destroys the notion of individual sovereignties inherent in our system of federalism. Such a rule would subject defendants to judgment in locations based on the activity of third persons and not the deliberate conduct of the defendant, making it impossible for defendants to plan and structure their business contacts and risks.

*Id.* at 945.

In *Lesnick,* the decedent was a chronic smoker who eventually died of mesothelioma, a form of lung cancer. Decedent's wife, a Maryland resident, sued both Lorillard, Inc. ("Lorillard"), a cigarette manufacturer and a New York corporation, and Hollingsworth & Vose Co. ("Hollingsworth"), a filter manufacturer and a Massachusetts corporation, in the federal district court in Maryland. *Id.* at 940. The plaintiff's complaint alleged that Hollingsworth manufactured filter mediums which contained crocidolite asbestos. Hollingsworth manufactured these filters in Massachusetts and then shipped them to Lorillard's cigarette manufacturing plants in Kentucky and New Jersey. Lorillard incorporated the filters containing crocidolite asbestos into cigarettes and marketed them throughout the nation. The plaintiff alleged that Hollingsworth knew or should have known of the dangers of crocidolite asbestos at the time that the filters were manufactured and failed to either improve the filters or warn the public.

Hollingsworth filed a motion to dismiss for lack of personal jurisdiction. Hollingsworth admitted when it sold the filters to Lorillard, it knew that those materials would eventually be sold in Maryland (as a component of a cigarette). However, Hollingsworth argued that mere knowledge is not sufficient to confer personal jurisdiction, and its activity must have been purposefully directed toward Maryland. *Id.* at 940–41. The plaintiff, on the other hand, argued that Hollingsworth subjected itself to personal jurisdiction in Maryland merely by placing the filters into the stream of commerce knowing that they would be bought by consumers in Maryland. *Id.* at 941. The plaintiff also argued that Hollingsworth's close relationship with Lorillard sub-

jected it to personal jurisdiction derivatively through Lorillard's contacts. The district court granted Hollingsworth's motion to dismiss for lack of personal jurisdiction, and the plaintiff appealed.

On appeal, the Fourth Circuit affirmed. The court noted that Hollingsworth was a Massachusetts corporation with its principal place of business in Massachusetts and had virtually "no presence in Maryland." *Id.* at 946. Most importantly, the court rejected the plaintiff's argument that Hollingsworth's close relationship with Lorillard subjected it to personal jurisdiction derivatively through Lorillard's contacts. In rejecting this argument, the court stated:

> Although [the two companies' close relationship] represents "additional conduct" beyond the mere sale to Lorillard of filter material, it does not rise to the level of establishing jurisdiction because none of the conduct is in any way directed *toward the state of Maryland.* All of the listed contacts between Lorillard and [Hollingsworth] relate only to [Hollingsworth's] agreement to supply filters from its plant in Massachusetts to Lorillard in Kentucky and New Jersey. While the result might be different if [Hollingsworth] had changed production to comply with Maryland regulations or if it had set up a customer relations network there … on the record in this case, we can discover no affirmative action by [Hollingsworth] rising to the level of purposeful availment.

*Id.* at 946–47 (emphasis in original).

 In this case, even after construing all relevant pleading allegations in the light most favorable to Crown Cork and Clark, assuming credibility, and drawing the most favorable inferences for the existence of jurisdiction, Crown Cork and Clark have not established a prima facie case of personal jurisdiction. Specifically, Crown Cork and Clark have not established that Detyens, Braswell, or Parsell have sufficient "minimum contacts" with North Carolina to confer

personal jurisdiction here. Crown Cork and Clark have alleged that moving Defendants arranged with C & M Oil, a South Carolina corporation, to dispose of their waste oil and that C & M Oil transported such waste oil to the Macon site in North Carolina. In support of these allegations, Crown Cork and Clark have submitted affidavits of two C & M Oil employees who assert that C & M Oil collected waste oil from those Defendants in South Carolina and transported it for treatment to the Macon site in Richmond County, North Carolina. In their affidavits, all of the moving Defendants state that their respective corporations were organized under the laws of South Carolina, that they have no offices or agents in North Carolina, that they do not and have not engaged in any business in North Carolina, and that they do not maintain any bank accounts, real estate, or other property in North Carolina. Crown Cork and Clark have not provided any evidence to the contrary. Like in *Lesnick,* none of moving Defendants engage in any conduct which is in any way directed *toward the state of North Carolina.* Defendants arranged with C & M Oil Co., a South Carolina corporation, to dispose of their waste oil. This arrangement occurred in South Carolina. Defendants' only contact with North Carolina occurred when C & M Oil Co. transported their waste oil to the Macon site in North Carolina. Crown Cork and Clark have not provided evidence that any of the moving Defendants knew that the waste oil was being transported to North Carolina. As in *Lesnick,* the Court finds no affirmative action by any of the moving Defendants which rises to the level of "purposeful availment" with North Carolina as contemplated by *Burger King, Woodson, Hanson,* and *International Shoe.* In addition, Crown Cork and Clark have not shown that moving Defendants have in any way invoked the benefits and protections of the laws of North Carolina. Thus, Crown Cork and Clark have failed to satisfy the first prong of the *Lesnick* test for personal jurisdiction.[4]

---

4. Crown Cork and Clark argue that for purposes of CERCLA, a non-resident's mere arrangement for the disposal of hazardous wastes which results in the disposal of those substances in the forum state provides minimum contacts with that

forum, regardless of whether the non-resident had any knowledge that the hazardous substances were to be brought into that forum. *See Violet v. Picillo,* 613 F.Supp. 1563 (D.R.I.1985) and *O'Neil v. Picillo,* 682 F.Supp. 706 (D.R.I.

## III.

Crown Cork and Clark also request that in the event that the Court finds no personal jurisdiction, the Court should transfer the case to the United States District Court for the District of South Carolina pursuant to 28 U.S.C. § 1406(a).[5] Title 28 U.S.C. § 1406(a) states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district, shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." The Fourth Circuit has expressly advocated a reading of § 1406(a) which allows "the transfer of a case to any district, which would have had venue if the case were originally brought there, for any reason which constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district." See Porter v. Groat, 840 F.2d 255, 258 (4th Cir.1988). Courts have transferred cases pursuant to § 1406(a) for impediments in the transferor district such as lack of personal jurisdiction. See id.; see also Corke v. Sameiet M.S. Song of Norway, 572 F.2d 77 (2nd Cir.1978); Taylor v. Love, 415 F.2d 1118 (6th Cir.1969), cert. denied, 397 U.S. 1023, 90 S.Ct. 1257, 25 L.Ed.2d 533 (1970); Mayo Clinic v. Kaiser, 383 F.2d 653 (8th Cir.1967); Dubin v. United States, 380 F.2d 813 (5th Cir.1967); Verosol B.V. v. Hunter Douglas, Inc., 806 F.Supp. 582 (E.D.Va. 1992); Glaxo Inc. v. Genpharm Pharmaceuticals, Inc., 796 F.Supp. 872 (E.D.N.C.1992); Jaffe v. Julien, 754 F.Supp. 49 (E.D.Pa.1991); McLaughlin v. Copeland, 435 F.Supp. 513 (D.Md.1977).

In this case, Crown Cork and Clark have such an impediment. Without question, however, personal jurisdiction would exist over the moving Defendants in South Carolina. In addition, 42 U.S.C. § 9613(b) provides that for civil proceedings under CERCLA, "[v]enue shall lie in any district in which the release or damages occurred, or in which the defendant resides, may be found, or has his principal office." Therefore, venue would have been proper in South Carolina had Crown Cork and Clark originally chose to bring the lawsuit there. Furthermore, the "interest of justice" require such a transfer. See Terukuni Kaiun Kaisha, Ltd. v. C.R. Rittenberry and Associates, Inc., 454 F.Supp. 418, 423 (S.D.N.Y.1978) (noting that where transfer "would obviate the jurisdictional difficulty", the interest of justice would

1988), aff'd on other grounds, 883 F.2d 176 (1st Cir.1989), cert. denied sub nom. American Cyanamid Co. v. O'Neil, 493 U.S. 1071, 110 S.Ct. 1115, 107 L.Ed.2d 1022 (1990) and United States v. Conservation Chem. Co., 619 F.Supp. 162 (W.D.Mo.1985). Admittedly, the cases cited by Plaintiffs support the proposition that under CERCLA a non-resident can be subject to personal jurisdiction on such facts. However, this Court finds that despite CERCLA's compensatory scheme, such a broad reading would allow "minimum contacts" to essentially equal "no contacts." As a result, such a broad reading of CERCLA necessarily impedes upon the constitutional limitations of minimum contacts as defined by the Supreme Court.

Also, the Court is mindful that the Fourth Circuit's analysis in Lesnick dealt with personal jurisdiction in the "stream of commerce" setting and not the CERCLA setting. Nevertheless, the Court finds that the Lesnick analysis of the requirements for minimum contacts to be precisely on point and controlling in this case.

**5.** Against the wishes of Crown Cork and Clark, this Court will not defer a final ruling on the motion to dismiss for lack of personal jurisdiction and will not allow Crown Cork and Clark additional time to conduct discovery on the jurisdictional issue. Limited discovery may be warranted to explore jurisdictional facts in some circumstances. See McLaughlin v. McPhail, 707 F.2d 800, 806–07 (4th Cir.1983) (per curiam). However, where a party has had ample time and opportunity to take discovery and the pleadings contain no specific facts that could establish jurisdiction, a court need not permit even limited discovery. See Mylan Laboratories, Inc. v. Akzo, N.V., 2 F.3d 56, 64 (4th Cir.1993); Naartex Consulting Corp. v. Watt, 722 F.2d 779, 788 (D.C.Cir. 1983), cert. denied sub. nom. Naartex Consulting Corp. v. Clark, 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984); see also Phillips USA, Inc. v. Allflex USA, Inc., 857 F.Supp. 789, 793 (D.Kan. 1994).

In this case, Crown Cork and Clark have had ample time to conduct discovery which would, if the requisite evidence existed, have permitted them to make a prima facie showing of personal jurisdiction. Crown Cork and Clark have been on notice that personal jurisdiction would be at issue for over twenty months. In addition, Crown Cork and Clark's pleadings and depositions do not contain specific facts that could establish even a prima facie case of jurisdiction. See Naartex, 722 F.2d at 788 n. 15–16. Therefore, an allowance of discovery is not warranted.

be served). Thus, § 1406(a) authorizes the transfer to the District Court of South Carolina from this district and Plaintiffs' request for such a transfer will be GRANTED.