**REGENT LIGHTING CORPORATION,**
**Plaintiff,**

v.

**AMERICAN LIGHTING CONCEPT, INC.,**
**and Grandlite International Corporation, jointly and severally, Defendants.**

**No. Civ. 2:96CV439.**

United States District Court,
M.D. North Carolina,
Greensboro Division.

Feb. 10, 1997.

Susan Freya Olive, Olive & Olive, P.A., Durham, NC, Mark S. Jacobs, Lipson, Neilson, Jacobs & Cole, P.C., Troy, MI, for Regent Lighting Corporation, a Delaware Corporation, plaintiff.

James A. Medford, Smith Helms Mulliss & Moore, Greensboro, NC, Mark R. Smith, Smith Helms Mulliss & Moore, Greensboro, NC, for American Lighting Concept, Inc., a

California Corporation, jointly and severally, defendants.

## MEMORANDUM OPINION

BULLOCK, Chief Judge.

Plaintiff Regent Lighting Corporation ("Regent") filed this action against Defendants American Lighting Concept, Inc. ("American") and Grandlite International Corporation ("Grandlite"), alleging violations of the Lanham Act, 15 U.S.C. § 1125(a), the North Carolina Racketeer Influenced and Corrupt Organizations Act ("RICO"), N.C.Gen.Stat. § 75D–1 et seq., and North Carolina's unfair and deceptive trade practices statute, N.C.Gen.Stat. § 75–1.1, arising out of Defendants' marketing and sale of the MV–175 mercury vapor security light ("MV–175"). This matter is before the court on Defendants' motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, and, in the alternative, Defendants' motion to transfer venue to the Central District of California pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1404(a). For the reasons set forth hereafter, the court finds that Defendants are not subject to personal jurisdiction in North Carolina and will transfer the case to the Central District of California in the interest of justice.

## FACTS

Plaintiff, a manufacturer of home and commercial lighting products, is a Delaware corporation with its principal place of business in Burlington, North Carolina. Defendants, also manufacturers of consumer and industrial lighting products, are associated California corporations which share a principal place of business in Downy, California. Defendants sell their products in the United States, Canada, and overseas, but the majority of their sales are made within California. Defendants manufacture the MV–175 at issue in this suit, a photosensitive 175 watt mercury vapor outdoor security light which competes with a security light manufactured by Plaintiff. Approximately ninety per cent (90%) of the MV–175 lights sold in 1996 were bought by a single California customer for resale solely within California. Plaintiff has instituted an action in this district to seek damages from Defendants for allegedly using a photograph of Plaintiff's light on Defendants' packaging for the MV–175 and for other alleged unfair and deceptive acts arising out of Defendants' marketing of its product.

Defendants maintain that they are not subject to jurisdiction in this district because they do not have any pertinent contacts with North Carolina. While Defendants have employed an independent sales representative since 1992 who does not work out of North Carolina but who is responsible for a region which includes North Carolina, Defendants contend that they have not exhibited their products or solicited sales in the state of North Carolina in 1993, 1995, and 1996. However, products manufactured by Defendants other than the MV–175 were sold in North Carolina between 1994 and 1996. In 1994, Defendants sold $24,686.40 worth of lighting products unrelated to the allegedly infringing product to a single North Carolina retailer. This transaction accounted for .88% of Defendants' sales in 1994. In addition to this unrelated product, mini worklights manufactured by Defendants ended up in at least one of the ninety-seven (97) Kerr Drug stores operated in North Carolina after Kerr Drug was acquired by Thrift Drug in February 1995. Thrift Drug is a Pennsylvania corporation which placed an order with Defendants for $23,367.00 worth of worklights in 1995 and for $13,539.63 worth of mini worklights in 1996. These unrelated goods were shipped to Thrift Drug in Pittsburgh which then, unknown to Defendants, transferred a portion of its inventory to the newly acquired Kerr Drug subsidiary.[1]

With regard to the MV–175, the only contact Defendants have with North Carolina is the sale of two of the security lights from an Ace Hardware store in Burlington, North

---

1. Defendants assert that the sales to Thrift Drug were de minimis and that only around $5,535.99 worth of the lights would have ended up in North Carolina Kerr Drug stores assuming equal division of Defendants' products among the 650 stores owned by Thrift Drug throughout the country.

Carolina, on June 3, 1996. Although the Ace Hardware store has never stocked the MV–175, Mark Merner, an employee of Plaintiff, had two of the lights specially ordered and purchased them at the request of Plaintiff's vice president Ed Small the day before this action was filed. Aside from this sale, Defendants have never exhibited, sold, or distributed any of the MV–175 security lights in this state. Defendants did exhibit, however, a prototype of the MV–175 at international trade shows in Chicago and Toronto in 1993 and 1994.[2] Plaintiff asserts that these trade shows are generally attended by purchasers either headquartered in or with stores located in North Carolina.

## DISCUSSION

Plaintiff bears the ultimate burden of proof that personal jurisdiction is proper by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989). However, when the court examines this issue only on the basis of the motions, legal memoranda, and the allegations of the complaint, Plaintiff need make only a *prima facie* showing of personal jurisdiction. *Crown Cork & Seal Co. v. Dockery*, 886 F.Supp. 1253, 1256 (M.D.N.C.1995). In deciding whether Plaintiff has made a *prima facie* showing, "the Court must construe all relevant pleading allegations in the light most favorable to the Plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* (citing *Combs*, 886 F.2d at 676).

To determine whether personal jurisdiction is proper, the court must engage in a two-part inquiry. First, the long-arm statute of the state must confer jurisdiction and, second, the exercise of jurisdiction must comply with the due process clause of the Fourteenth Amendment. *Vishay Intertechnology, Inc. v. Delta Int'l Corp.*, 696 F.2d 1062, 1064 (4th Cir.1982).

With regard to the first part of the inquiry, the North Carolina long-arm statute defines the parameters of proper personal jurisdic-

tion. N.C.Gen.Stat. § 1–75.4. The provisions of this statute are to "be given liberal construction, making available to the North Carolina courts 'the full jurisdictional powers permissible under federal due process.'" *Vishay Intertechnology*, 696 F.2d at 1065 (quoting *Dillon v. Numismatic, Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977)). The long-arm statute provides in pertinent part that North Carolina courts have jurisdiction over:

> any action claiming injury to person or property within this State arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury ... (b) Products, materials or thing processed, serviced or manufactured by the defendant were used or consumed, within this State in the ordinary course of business.

N.C.Gen.Stat. § 1–75.4(4)(b).

To fall with in this provision, Plaintiff must claim: (1) an injury within North Carolina; (2) arising out of Defendants' acts outside of the state; (3) at or near the time Defendants' products were being used in North Carolina in the ordinary course of trade. *Dowless v. Warren–Rupp Houdailles, Inc.*, 800 F.2d 1305, 1307 (4th Cir.1986).

In this case Plaintiff has established a *prima facie* case that Section 1–75.4(4)(b) confers jurisdiction over Defendants. First, Plaintiff claims that it was injured by Defendants' alleged use of a photograph of Plaintiff's security light on the packaging for the MV–175 and by other alleged unfair and deceptive act arising out of the marketing of the MV–175.[3] The alleged Lanham Act violation and unfair and deceptive practices are sufficient to meet the local injury requirement. *See Dowless*, 800 F.2d at 1307 (allegation that defendant misappropriated product improvement idea fulfilled the local injury requirement); *Vishay Intertechnology*, 696 F.2d at 1067 (finding long-arm statute injury requirement met where plaintiff alleged unfair and deceptive business practices). Sec-

---

**2.** Plaintiff maintains that the prototype represented to be Defendants' MV–175 at these trade shows was actually a sample of Regent's competing security light.

**3.** "Mere allegations are sufficient to satisfy the statutory requirements of § 1–75.4(4)(b)." *Dowless*, 800 F.2d at 1307.

ond, the injuries Plaintiff suffered were the result of Defendants' actions outside of North Carolina developing their packaging and marketing strategies. Finally, Plaintiff asserts that Defendants' products were sold in North Carolina in the ordinary course of trade at the time of the injury.[4] Because Defendants have failed to contradict Plaintiff's *prima facie* showing, Plaintiff has satisfied North Carolina's long-arm statute.

■■■ The due process stage of the analysis requires the existence of "certain minimum contacts [between the non-resident defendant and the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal citations omitted). When examining the sufficiency of a non-resident defendant's contacts, "[t]he touchstone of the minimum contacts analysis remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state." *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir.1994) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)), *cert. denied*, 513 U.S. 1151, 115 S.Ct. 1103, 130 L.Ed.2d 1070 (1995). In short, jurisdiction is proper when a relationship exists between the defendant and the forum "such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

■■ In *Lesnick*, the Fourth Circuit articulated a two-part test to be applied when determining whether the requirements of due process are satisfied. Under this test, the court should consider whether:

(1) the defendant has created a substantial connection to the forum state by action

purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state; and (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice, taking into account such factors as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies.

*Lesnick*, 35 F.3d at 945–46.

■■ Under the first prong of the *Lesnick* test, the threshold level of contact required to substantially connect the non-resident defendant with the forum varies depending on the type of jurisdiction being exercised. General jurisdiction involves the exercise of personal jurisdiction over a defendant in a suit that does not arise out of the defendant's activities in the forum state. *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 n. 2 (4th Cir. 1993) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). To exercise general jurisdiction, "the defendant's contacts with the forum must be 'continuous and systematic' in order to satisfy the due process clause." *Federal Ins. Co. v. Lake Shore, Inc.*, 886 F.2d 654, 660 (4th Cir.1989). Under this elevated contacts threshold, "broad constructions of general jurisdiction should be generally disfavored." *Nichols*, 991 F.2d at 1200.

■■ Specific jurisdiction, by contrast, may be exercised when a cause of action arises out of the defendant's activities in the forum state. *Nichols*, 991 F.2d at 1199 n. 2

---

4. While a question exists concerning the weight the court will give to the purchase of two MV–175 lights by an agent of Plaintiff in anticipation of this litigation, it appears that other lighting products manufactured by Defendants were used or consumed in North Carolina from 1994 to 1996. The *Dowless* court noted that the products used within North Carolina in the ordinary course of trade do not have to be the products which actually caused the injury. *Dowless*, 800 F.2d at 1307. Thus, Defendants' unrelated products which ended up in North Carolina in the ordinary course of trade are sufficient for purposes of the long-arm statute. However, the sufficiency of Defendants' contacts with this forum to meet federal due process concerns must still be examined.

(citing *Helicopteros,* 466 U.S. at 414 n. 8, 104 S.Ct. 1868). The requisite level of contacts in a specific jurisdiction case need not rise to the level of systematic and continuous because "an out-of-state defendant should more reasonably expect to be haled into a foreign state's courts when his purposefully targeted conduct has caused harm within that state's borders." *First Am. First, Inc. v. National Ass'n of Bank Women,* 802 F.2d 1511, 1516 (4th Cir.1986).

■ In this case, Plaintiff asserts that Defendant has sufficient contacts with North Carolina to support the exercise of either general or specific personal jurisdiction. First, Plaintiff argues that specific jurisdiction exists because of the special order and sale of two MV–175 security lights, the product at issue in this litigation, to an employee of Plaintiff on the day before this suit was instituted. However, the contacts to be considered for purposes of personal jurisdiction are those actually generated by Defendants, not those created by the unilateral acts of Plaintiff. *Chung v. NANA Dev. Corp.,* 783 F.2d 1124, 1127 (4th Cir.), *cert. denied,* 479 U.S. 948, 107 S.Ct. 431, 93 L.Ed.2d 381 (1986).

Here, neither Ace Hardware nor any other retail store in North Carolina stocks and sells the MV–175 security light manufactured by Defendants. The only contact between North Carolina and the MV–175 was generated by an employee of Plaintiff who obtained the lights through a special order. This lone transaction involving the allegedly infringing product in North Carolina cannot be the basis of specific jurisdiction over Defendants. *See DeSantis v. Hafner Creations, Inc.,* 949 F.Supp. 419, 421 (E.D.Va.1996) (refusing to allow exercise of personal jurisdiction where defendant's only contact with the forum was a special order initiated by the plaintiff). Any other holding would allow a resident plaintiff to manufacture jurisdiction over a non-resident defendant in an inconvenient forum even when the defendant has not purposefully directed any activity toward the forum state.

■ Second, Plaintiff contends that general personal jurisdiction exists over Defendants as a result of the stream of commerce theory and the sale of unrelated products in North Carolina from 1994 to 1996. Under the stream of commerce theory, "[a] forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World–Wide Volkswagen,* 444 U.S. at 297–98, 100 S.Ct. 559. However, in light of uncertainty concerning the exact parameters of this theory, *see Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (splitting over whether simply introducing product into the stream of commerce, without more, satisfied due process concerns), the Fourth Circuit recently has interpreted the stream of commerce theory more narrowly, "requiring purposeful activity on the part of defendants to establish a meaningful contact with the forum state." *Lesnick,* 35 F.3d at 944.

■ Regardless of the exact contours of the theory, however, the stream of commerce theory is simply inapplicable in this case. This court has previously held that "[t]he stream of commerce theory for asserting personal jurisdiction is inapplicable in a case such as this where the cause of action did not arise from the manufacturer's products in the forum state." *DP Environmental Servs., Inc. v. Bertlesen,* 834 F.Supp. 162, 166 (M.D.N.C.1993). *See also Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 375 (5th Cir. 1987) ("We disagree with the district court's conclusion that the 'stream of commerce' will support a finding of general jurisdiction."); *Verosol B.V. v. Hunter Douglas, Inc.,* 806 F.Supp. 582, 589–90 n. 3 (E.D.Va.1992). Here, Defendants sell around ninety per cent (90%) of the MV–175 security lights in California solely for resale within California. As a result, the allegedly infringing product never entered North Carolina through the stream of commerce.[5] The only products

---

5. Although two MV–175 lights were purchased in North Carolina by an employee of Plaintiff, the court will disregard this attempt to manufacture jurisdiction when assessing whether Defendants

manufactured by Defendants which did enter North Carolina are entirely unrelated to the present suit. In short, the stream of commerce theory, which is based on notions of specific jurisdiction, may not provide grounds for personal jurisdiction when the product at issue in the litigation is not the product that entered the forum jurisdiction through the stream of commerce.

Plaintiff also argues that other contacts exist between Defendants and North Carolina which provide a basis for the exercise of general jurisdiction. First, Plaintiff points to the sale of $24,686.40 worth of magnifier swing-arm lamps to a North Carolina retailer in 1994. Second, Plaintiff calls attention to the unrelated products which ended up in at least one Kerr Drug store in North Carolina after the chain's merger with Thrift Drug, a Pennsylvania company with whom Defendants have engaged in business dealings. Third, Plaintiff directs the court's attention to Defendants' national advertising of products including the MV–175 and employment of a sales representative for a region covering North Carolina.

Taken cumulatively, however, the *de minimis* sale of products in 1994 and the transfer of a small number of products to a North Carolina subsidiary of Thrift Drug unknown to Defendants are not the purposefully directed, continuous and systematic contacts within North Carolina required to satisfy the elevated threshold for general jurisdiction. *See Wolf v. Richmond County Hosp. Auth.,* 745 F.2d 904, 909–12 (4th Cir.1984) (finding that defendant's contacts with forum state which included the receipt of one-fifth of its income from the forum were *de minimis* and insufficient to support general jurisdiction), *cert. denied,* 474 U.S. 826, 106 S.Ct. 83, 88 L.Ed.2d 68 (1985). Specifically, the 1994 transaction with a North Carolina retailer accounted for only .88% of Defendants' sales for that year. Furthermore, the total sales to Thrift Drug in the amount of $36,906 .63 represented less than one per cent (1%) of Defendants' sales in 1995 and 1996. Assuming an equal division of the unrelated products among Thrift Drug's 650 stores throughout the country after Defendants shipped the

lights to Pittsburgh, Pennsylvania, the percentage of sales attributable to North Carolina would have been even lower than one per cent (1%); only $5,535.99 worth of the unrelated goods would have ended up in North Carolina stores.

In addition, Defendants have not conducted any other business since 1994 with North Carolina buyers or retailers that Defendants knew owned or operated stores within North Carolina. While Defendants never conducted any business directly with Kerr Drug, it is undisputed that a portion of the goods sold to Thrift Drug in 1995 and 1996 ended up in their North Carolina stores. However, the transfer of products to Kerr Drug stores in North Carolina was not the result of purposeful conduct by Defendants designed to create sales within the state. In fact, Defendants were not aware that Thrift Drug even owned a North Carolina subsidiary at the time of Thrift Drug's purchases or that Thrift Drug would transfer any products to North Carolina.

Finally, the mere fact that Defendants advertised their products nationally at trade shows and employ a sales representative for a region which includes North Carolina is insufficient to permit the assertion of general jurisdiction over Defendants. *See Nichols,* 991 F.2d at 1200 (holding that advertising and solicitation activities are not the minimum contacts necessary for general jurisdiction); *Ash v. Burnham,* 80 N.C.App. 459, 461–62, 343 S.E.2d 2, 3–4, *aff'd,* 318 N.C. 504, 349 S.E.2d 579 (1986) (finding that contacts including advertising in national magazines, small sales solicited by independent sales representatives within the forum, and the ownership of a subsidiary in North Carolina were insufficient to support general jurisdiction). Defendants' sales representative for the region did not exhibit, sell, or distribute any of Defendants' products in North Carolina. Consequently, the representative did not create any purposeful contacts with North Carolina, much less any which rise to the level of systematic and continuous. Because the exercise of personal jurisdiction over Defendants does not satisfy the first

had sufficient contacts with the forum to support

the exercise of personal jurisdiction.

prong of the *Lesnick* test requiring a substantial connection with the forum state, the court need not consider the fairness concerns under the second prong of the test.

■ Although Defendants are not subject to personal jurisdiction in this district, dismissal of the action is not the only alternative available to the court. A district court "in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The Fourth Circuit has adopted an expansive interpretation of this statutory provision, "authoriz[ing] the transfer of a case to any district, which would have had venue if the case were originally brought there, for any reason which constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district." *Porter v. Groat*, 840 F.2d 255, 258 (4th Cir.1988).

■ In this case, Defendants are subject to personal jurisdiction in the central district of California where they reside and where the alleged cause of action arose. Thus, the impediment of personal jurisdiction which exists in this district would not prevent this suit from proceeding in California. Furthermore, many of the important witnesses and documents concerning the marketing of the MV–175 also are located in California. Therefore, in the interest of justice the court will grant Defendants' motion to transfer the case to the Central District of California.

## CONCLUSION

For the reasons set forth above, the court will deny Defendants' motion to dismiss but will grant Defendants' motion to transfer the matter to the Central District of California.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

## *ORDER*

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Defendants' motion to dismiss [# 9–1] be, and the same hereby is, **DENIED.**

IT IS FURTHER ORDERED that Defendants' motion to transfer [# 9–2] be, and the same hereby is, **GRANTED,** and this action is **TRANSFERRED** to the United States District Court for the Central District of California. The Clerk shall forward the record in this case to the Clerk of the United States District Court for the Central District of California.