**ACCU–SPORT INTERNATIONAL, INC., Plaintiff,**

v.

**SWING DYNAMICS, INC., Defendant.**

No. 1:04 CV 00508.

United States District Court, M.D. North Carolina.

March 25, 2005.

Michael S. Connor, Richard M. McDermott, Charlotte, NC, Kevin T. O'Brien, New York City, for Plaintiff.

Deborah Lucy Edney, William L. Rikard, Jr., Charlotte, NC, for Defendant.

## MEMORANDUM OPINION

BULLOCK, District Judge.

Accu–Sport International, Inc. ("Plaintiff") filed this action against Swing Dynamics, Inc.[1] ("Defendant") on June 4, 2004, alleging violations of North Carolina's unfair and deceptive trade practices

---

1. Defendant's actual name is Swing Dynam- ics, LLC.

statute, N.C. Gen.Stat. § 75–1.1, unfair competition, interference with prospective economic advantage, and slander per se, each in violation of North Carolina common law, and violations of the Lanham Act, 15 U.S.C. § 1125(a). Plaintiff also seeks declaratory judgment related to Defendant's patent rights, or lack thereof, in the golf swing analysis products Defendant sells. Before the court is Defendant's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Because Plaintiff has failed to allege facts showing the minimum contacts between Defendant and North Carolina required to permit the exercise of personal jurisdiction in this state, Defendant's motion to dismiss will be granted.

## FACTS

Plaintiff, a North Carolina corporation with its principal place of business in Winston–Salem, North Carolina, sells golf training equipment and services to golf equipment retailers, course professionals, and other similar customers. Defendant is a California limited liability company headquartered in Carlsbad, California, and was formed in October, 2003 when it acquired the Swing Dynamics division of a company called Orthopedic Systems, Inc. ("OSI"). Defendant competes directly with Plaintiff, selling similar products and services to the same target customer base of approximately 2500 businesses nationwide.

Plaintiff claims that Defendant violated federal and North Carolina law when, in an effort to compete more successfully against Plaintiff, it spread false and misleading information to potential customers. Plaintiff alleges that Defendant told potential customers that it held patents on some of its products, that Plaintiff's products infringed on those patents, and that Defendant intended to sue Plaintiff for such infringements, thereby jeopardizing Plaintiff's ability to continue business operations. Plaintiff further alleges that Andrew Tarlow, President of Defendant, falsely informed Plaintiff's potential customers that Plaintiff improperly acquired Defendant's software source code. While Plaintiff fails to specify precisely where, when, and to whom Defendant made such statements, it does not allege that they were made within North Carolina.

Plaintiff filed suit in this court on a number of claims, including slander, unfair and deceptive trade practices, and unfair competition under federal and North Carolina law, all of which arise out of Defendant's allegedly false statements. Defendant asserts that its contacts with North Carolina are insufficient to establish the minimum contacts necessary for personal jurisdiction. Defendant is not qualified to do business in North Carolina, does not have a registered agent for service of process in North Carolina, has no employees, bank accounts, real or personal property, offices, or facilities in the state, and has not sold products to any North Carolina customers. No employee of Defendant has traveled to North Carolina for any business related purposes. The only current contacts Defendant has with the state are through an informational website accessible to all Internet users, including those in North Carolina. Defendant has also, on three occasions, placed advertisements in golf magazines with national circulations and its predecessor in ownership, OSI, sold one piece of equipment to a North Carolina customer for $16,000.

## DISCUSSION

 Plaintiff must prove, by a preponderance of the evidence, that personal jurisdiction is proper. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989). However, when considering the issue without an evidentiary hearing, Plaintiff need make only a *prima facie* showing of personal jurisdiction. *Crown Cork & Seal Co. v.*

*Dockery,* 886 F.Supp. 1253, 1256 (M.D.N.C.1995). In deciding whether Plaintiff has made a *prima facie* showing, "the Court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* (citing *Combs,* 886 F.2d at 676).

■ "Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 396 (4th Cir.2003). "Since *in personam* jurisdiction of a state court is limited by that state's laws and by the Fourteenth Amendment, [the court must] first inquire whether the state long-arm statute authorizes the exercise of jurisdiction over the defendant. If it does, [the court] must then determine whether the state court's exercise of such jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment." *ESAB Group v. Centricut, Inc.,* 126 F.3d 617, 622 (4th Cir.1997) (internal citations omitted).

North Carolina's long-arm statute provides, in relevant part, that the courts of the state have personal jurisdiction over any party who, "when service of process is made on such a party ... is engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise." N.C. Gen.Stat. § 1–75.4(1)(d). The statute further provides that personal jurisdiction is proper:

In any action ... claiming injury to person or property within this State arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury either:

a. Solicitation or services activities were carried on within this State by or on behalf of the defendant; [or]

b. Products, materials or thing[s] processed, serviced or manufactured by the defendant were used or consumed, within this State in the ordinary course of trade.

N.C. Gen.Stat. § 1–75.4(4)(a) and (b).

■ "The provisions of this statute are to 'be given liberal construction, making available to the North Carolina courts the full jurisdictional powers permissible under federal due process.'" *Regent Lighting Corp. v. Am. Lighting Concept, Inc.,* 25 F.Supp.2d 705, 709 (M.D.N.C.1997) (quoting *Vishay Intertechnology, Inc. v. Delta Int'l Corp.,* 696 F.2d 1062, 1065 (4th Cir.1982)). "Consequently, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'" *ESAB Group,* 126 F.3d at 623 (quoting *Stover v. O'Connell Assocs., Inc.,* 84 F.3d 132, 135–36 (4th Cir.1996)).

■ Turning to the constitutional inquiry, "[a] court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" *Carefirst of Md., Inc.,* 334 F.3d at 397 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). "Determining the extent of a State's judicial power over persons outside of its borders under the *International Shoe* standard can be undertaken through two different approaches—by finding specific jurisdiction based on conduct connected to the suit or by finding general jurisdiction." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 711 (4th Cir.2002) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

■ In determining whether specific jurisdiction exists, the court considers "(1) the extent to which the defendant 'purposefully availed' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.' " *Id.* at 712 (citing *Christian Science Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan,* 259 F.3d 209, 216 (4th Cir.2001)). Plaintiff's claims are based on the false and misleading statements of Defendant, none of which are alleged to have been uttered in North Carolina or directed to potential customers in North Carolina. Assuming, only for purposes of determining whether grounds exist to support a finding of specific jurisdiction, that Defendant's website, advertisements, and the sale of one piece of equipment to a North Carolina customer by Defendant's predecessor constitute activities "directed at the state," it nonetheless is clear that Plaintiff's claims do not arise out of such activities, but arise entirely out of other, unrelated activities that cannot reasonably be said to have been undertaken by Defendant to "purposely avail" itself of the privilege of conducting business in North Carolina. The exercise of specific personal jurisdiction based on such activities is, therefore, not reasonable under the Fourteenth Amendment.

■ Because Defendant's contacts with the state are not the basis for Plaintiff's suit and specific jurisdiction is inapplicable, Plaintiff must allege facts sufficient to establish, *prima facie,* general jurisdiction over Defendant. General jurisdiction arises "from the defendant's general, more persistent, but unrelated contacts with the State." *Id.* Such contacts must be " 'continuous and systematic,' a more demanding standard than is necessary for establishing specific jurisdiction." *Id.* (citing *Helicopteros,* 466 U.S. at 414 n. 9). "Under

this elevated contacts threshold, broad constructions of general jurisdiction should be generally disfavored." *Regent Lighting Corp.,* 25 F.Supp.2d at 710 (internal quotation omitted). Indeed,

[w]hen, as in the case at bar, a suit does not arise out of the defendant's activities in the forum state, the court must exercise general jurisdiction, and the requisite minimum contacts between the defendant and the forum state are fairly extensive. 'Conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to [general jurisdiction].' *International Shoe,* 326 U.S. at 317, 66 S.Ct. 154. Even 'continuous activity of some sorts [by a corporation] within a state is not enough to support [general jurisdiction over the corporation].' *Id.* at 318, 66 S.Ct. 154. Only when the 'continuous corporate operation within a state [is] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities' may a court assert general jurisdiction over a corporate defendant. *Id.*

*Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1199 (4th Cir.1993) (footnote omitted) (internal citation omitted).

■ Plaintiff contends Defendant's activities in North Carolina are sufficient to establish general jurisdiction and relies heavily on the sale by Defendant's predecessor in ownership of a single piece of equipment to a North Carolina customer. Plaintiff notes that two North Carolina corporations were involved in the purchase (the purchasing entity was owned by a woman whose husband owned the entity that ultimately received and used the equipment); that a two-year warranty applied to the purchased goods; and that Defendant shipped six software updates to the North Carolina customer under the

terms of the warranty. Plaintiff further relies on a sales receipt issued by Defendant that identifies the sales territory as North Carolina and bears the initials of a sales person, from which Plaintiff infers Defendant assigned a sales person to North Carolina.

Even assuming, for the purposes of deciding Defendant's motion to dismiss, that the sales activities of Defendant's predecessor in interest are attributable to Defendant,[2] such activities fall far short of the level required to support a finding of general jurisdiction. Defendant's conduct related to this single, isolated transaction, including the shipment of software updates and drawing all reasonable inferences from the sales receipt, is neither continuous nor systematic enough to justify suit against Defendant in North Carolina for acts entirely separate from the transaction. *See id.* at 1199, 1200 (noting that "employing salesmen to solicit orders" in a state does not, without more, establish general jurisdiction, and that a "one-time contract" is not the type of continuous corporate operation required to establish general jurisdiction). Furthermore, the $16,000 sale accounted for a mere 1.3 per cent of Defendant's annual sales. Such *de minimis* sales of Defendant's products are "not the purposefully directed, continuous and systematic contacts within North Carolina required to satisfy the elevated threshold for general jurisdiction." *Regent Lighting Corp.*, 25 F.Supp.2d at 712 (citing *Wolf v. Richmond County Hosp. Auth.*, 745 F.2d 904, 909–12 (4th Cir.1984), in which the court found that sales within the state

accounting for one-fifth of the defendant's income were *de minimis* and insufficient to establish general jurisdiction).

■ Plaintiff also relies on advertisements that Defendant published in golf magazines with national circulations to assert general jurisdiction. This argument is without merit, as it is well established that solicitation, including advertisements in national magazines, is not the type of continuous, systematic, and forum-directed contact that warrants the exercise of general jurisdiction. *See, e.g., Nichols*, 991 F.2d at 1200; *Regent Lighting Corp.*, 25 F.Supp.2d at 712; and *Ash v. Burnham Corp.*, 80 N.C.App. 459, 461–62, 343 S.E.2d 2, *aff'd*, 318 N.C. 504, 349 S.E.2d 579 (1986).

■ Finally, Plaintiff relies on Defendant's website, accessible to North Carolina residents, to support a finding of general jurisdiction. The Fourth Circuit has "adopted and adapted" the sliding scale model first articulated in *Zippo Mfg. Co. v. Zippo Dot Com. Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997) to guide the inquiry into whether, in posting its website, Defendant has directed its activity to the forum state in a manner sufficient to establish personal jurisdiction. *See ALS Scan, Inc.*, 293 F.3d at 713. Underlying this inquiry is an examination of the level of interactivity and the commercial nature of the site. At one end of the scale lie those sites through which a user may enter into contracts with the owner of the site. At the other end lie passive, purely informational sites. The former may be a sufficient

---

**2.** Plaintiff seeks to strengthen Defendant's connection to the sale by its predecessor by noting that Tarlow, the president of Defendant, made telephone calls to the buyer at various times, some of which calls apparently were made before the sale. Tarlow counters that his relationship with the buyer was personal, not professional, and therefore the calls are not relevant. As noted, the court assumes for purposes of Defendant's motion to dismiss that the sales activity to the North Carolina customer is attributable to Defendant. The calls do not, however, when considered with all the other evidence relied upon by Plaintiff, change the court's conclusion that Defendant's activities are insufficient to establish general jurisdiction.

basis for the exercise of personal jurisdiction, while the latter may not. *Id.* at 714.[3]

Defendant's website is informational and passive, with interactivity limited to links that allow a user to email employees of Defendant and to access the site of an unrelated financing company. Such interactivity is not enough to tip the scale in favor of finding personal jurisdiction. *See, e.g., Carefirst of Md., Inc.,* 334 F.3d at 399 (noting that "a person's action of placing information on the Internet is not sufficient by itself to subject that person to personal jurisdiction in each State in which the information is accessed.") Plaintiff fails to allege any further evidence that, taken together with Defendant's Internet activities, would make the exercise of general jurisdiction in North Carolina proper. *See, e.g., Panavision Int'l. L.P. v. Toeppen,* 141 F.3d 1316, 1321 (9th Cir.1998) (holding that something more than posting and accessibility is needed to "indicate that the [Defendant] purposefully (albeit electronically) directed [its] activity in a substantial way to the forum state.")

## CONCLUSION

Plaintiff has failed to make a *prima facie* showing that Defendant is subject to the specific or general personal jurisdiction of this court. Therefore, for the reasons set forth in this opinion, Defendant's motion to dismiss will be granted.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

---

**3.** In *ALS Scan,* the Fourth Circuit discussed the *Zippo* sliding scale in the context of specific jurisdiction, which, as noted *supra,* requires a lower threshold of contact with the forum state than does general jurisdiction. The court rejected the notion that general jurisdiction could be based solely on the Internet activity of a defendant. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 715 (4th Cir.2002) (noting that "something

*ORDER*

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Defendant's motion to dismiss [Doc. # 9] is **GRANTED**, and this action is **DISMISSED**.

more" is required in addition to a showing that the defendant "regularly and systematically transmitt[ed] electronic signals into the State via the Internet.") *See also Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan,* 259 F.3d 209, 218 n. 11 (4th Cir.2001) (noting that the court would be "hesitant" to find personal jurisdiction proper based solely on Defendant's "minimally interactive" website).