DR. CLARENCE E. ASH, VIRGINIA N. ASH, BARBARA J. DEAN AND
RODNEY A. DEAN v. BURNHAM CORPORATION

No. 8526SC1061

(Filed 6 May 1986)

**Process § 9.1— New York corporation—insufficient minimum contacts**

The trial court erred by denying defendant's motion to dismiss for lack of
*in personam* jurisdiction in an action involving a boiler which was manufac-
tured in Pennsylvania by defendant New York corporation and which allegedly
malfunctioned in Ohio and injured a North Carolina resident. Defendant's only
contacts with North Carolina were that in 1984 it sold approximately $520,000
worth of boilers to North Carolina customers, accounting for about one-half
percent of its total boiler sales for the year; those sales were solicited by inde-
pendent contractors who acted as sales representatives for defendant and
other manufacturers; those representatives were paid by commission only and
defendant did not pay workers' compensation or unemployment charges on
their behalf; certain offices of those representatives were listed as places
through which customers could order repair parts from Pennsylvania; the
boilers were subject to a twenty-year limited warranty valid within the con-
tinental United States; defendant placed advertisements in national magazines
which reached North Carolina; and a wholly owned subsidiary of defendant en-
gaged in the business of greenhouse construction is authorized to do business
in North Carolina. The subsidiary's books are separate from defendant's and
each files a separate tax return; the sales representatives which solicit orders
for defendant's products in North Carolina do not solicit orders for the sub-
sidiary; there is no evidence that defendant and the subsidiary are not
separate and independent; and the national advertising, the limited warranties,
and the use of independent sales representatives and $520,000 in sales were
not sufficient to satisfy the continuous and systematic standard necessary for
asserting *in personam* jurisdiction where a claim does not arise out of or relate
to a defendant's activities in the forum state.

Judge PHILLIPS dissenting.

APPEAL by defendant from *Grist, Judge.* Order entered 24
July 1985 in Superior Court, MECKLENBURG County. Heard in the
Court of Appeals 13 February 1986.

Barbara Dean, a North Carolina resident, was visiting in the
Ohio home of Dr. and Mrs. Ash, when a boiler manufactured by

defendant allegedly malfunctioned, injuring Mrs. Dean and the Ashes. Plaintiffs commenced this action in Mecklenburg County Superior Court seeking damages for the injuries suffered. Rodney Dean, husband of Barbara Dean and also a North Carolina resident, seeks damages resulting from the injuries sustained by his wife, including loss of consortium, emotional distress, and costs of providing household services while his wife was incapacitated.

Defendant, a New York corporation with its principal place of business in New York, sought dismissal for lack of personal jurisdiction. The trial court denied defendant's motion to dismiss after hearing arguments of counsel. From the order of the trial court, defendant appeals.

*Golding, Crews, Meekins, Gordon & Gray, by Rodney Dean, for plaintiff appellees.*

*Womble, Carlyle, Sandridge & Rice, by Allan R. Gitter and William A. Blancato, for defendant appellant.*

ARNOLD, Judge.

Determining whether foreign defendants may be subjected to *in personam* jurisdiction in this state involves a two-pronged test. First, the Court must determine whether jurisdiction is proper under the North Carolina "long-arm" statute, G.S. 1-75.4. Second, the Court must determine whether the exercise of jurisdiction violates due process of law. *See Dillon v. Funding Corp.*, 291 N.C. 674, 231 S.E. 2d 629 (1977). Our Supreme Court has stated that the North Carolina "long-arm" statute provides for *in personam* jurisdiction to the full extent permitted by the United States Constitution. *Id.* Defendant does not deny that there are statutory grounds for the exercise of jurisdiction. Therefore, the only question before this Court is whether the North Carolina court's assertion of jurisdiction over defendant is consistent with the Due Process Clause of the Fourteenth Amendment.

Generally, due process requirements demand that defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L.Ed. 95, 102, 66 S.Ct. 154, 158 (1945). Within the broad principle of *International Shoe*, different stand-

ards apply in cases where the contact with the state gives rise to the cause of action and where, as in the instant case, plaintiff's claims arise totally outside of the state. *Wolf v. Richmond Cty. Hosp. Authority*, 745 F. 2d 904 (4th Cir. 1984), *cert. denied*, --- U.S. ---, 88 L.Ed. 2d 68, 106 S.Ct. 83, 54 U.S.L.W. 3224 (1985); *accord, Dollar Sav. Bank v. First Sec. Bank of Utah*, 746 F. 2d 208 (3rd Cir. 1984). The sufficiency of contacts threshold is elevated when the cause does not arise in the forum state or derive from the foreign corporation's transactions in the state. *Id.* The United States Supreme Court has characterized the test applied when a plaintiff's claim does not arise out of or relate to a defendant's activities in the forum state as whether the contacts are of a "continuous and systematic" nature. *Wolf*, 745 F. 2d at 909, *citing Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 80 L.Ed. 2d 404, 104 S.Ct. 1868 (1984). Thus, if Burnham conducts "continuous and systematic" corporate activities within this state, those activities are enough to make it fair and reasonable to subject Burnham to proceedings *in personam* in North Carolina, even though the cause of action arises out of an alleged malfunction of a boiler manufactured in Pennsylvania and installed in Ohio. *See Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 96 L.Ed. 485, 72 S.Ct. 413 (1952). Whether the type of activity conducted within the state is adequate to satisfy the due process requirements depends upon the facts of the particular case. *Dillon*, 291 N.C. at 679, 231 S.E. 2d at 632, *citing Perkins, supra.*

The relevant facts in the instant case are as follows: Burnham is a New York corporation with its principal place of business in New York. Burnham is not authorized to do business in North Carolina nor does it have an agent for service of process in this state. Burnham has never owned or leased any real property in North Carolina and has never maintained an office here. Burnham has no bank account or phone listings in this state. In 1984, Burnham sold approximately $520,000 worth of boilers to North Carolina customers accounting for about one-half percent of Burnham's total boiler sales for the year. These sales were solicited by independent contractors who act as sales representatives for Burnham and other manufacturers. These representatives are paid by commission only. Burnham does not pay workers' compensation or unemployment charges on their behalf. In addition Burnham lists certain offices of these representatives as places

through which customers can order repair parts from Lancaster, Pennsylvania. All orders for boilers placed through the representatives are accepted in either New York or Pennsylvania, and payments are mailed directly to a lock box in Pennsylvania. The boilers are shipped by common carrier f.o.b. Lancaster, Pennsylvania and are subject to a twenty-year limited warranty valid within the 48 contiguous United States. At least since 1978, Burnham has placed advertisements in several national magazines which reach North Carolina. Finally, a wholly owned subsidiary of Burnham, which is engaged in the business of greenhouse construction, is authorized to do business in North Carolina.

We find that these contacts with North Carolina are not so "continuous and systematic" as to warrant the exercise of *in personam* jurisdiction in this case. First, "[w]hen a subsidiary of a foreign corporation is carrying on business in a particular jurisdiction, the parent is not automatically subject to jurisdiction in the state. Thus, if the subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary." 4 Wright and Miller, Federal Practice and Procedure: Civil § 1069, at 255-56 (1969); *accord, Mills, Inc. v. Transit Co.*, 265 N.C. 61, 143 S.E. 2d 235 (1965). Burnham's subsidiary constructs greenhouses. The subsidiary's books are kept separate from those of Burnham and each files a separate tax return. The sales representatives who solicit orders for Burnham products in North Carolina do not solicit orders for the subsidiary. There is no evidence that Burnham and the subsidiary are not separate and independent, and we thus determine that the subsidiary's presence in this state is not to be considered as a basis for asserting jurisdiction over Burnham.

The national advertising that reaches North Carolina is a factor to be considered; however, it alone does not constitute sufficient contacts to support jurisdiction. *Marion v. Long*, 72 N.C. App. 585, 325 S.E. 2d 300, *disc. rev. denied*, 313 N.C. 604, 330 S.E. 2d 612 (1985). The standard of "continuous and systematic" general business contacts requires more. Nor do we find the limited warranties sufficient to meet this elevated standard.

Finally, though it is a close question, we do not believe that Burnham's system of employing independent sales representatives and the resultant $520,000 in sales are sufficient to support jurisdiction. In reaching this decision we rely on the following cases. *Putnam v. Publications*, 245 N.C. 432, 96 S.E. 2d 445 (1957), was a civil action for libel and invasion of privacy in which the defendant, a magazine and newspaper publisher, delivered its magazines by common carrier f.o.b. locations outside North Carolina to 18 independent wholesale dealers in this state for resale. This business transaction included a provision for credit to the dealers for unsold copies. The defendant also employed sales promotion representatives who made several business trips within this state. The court held that these were insufficient contacts for the purpose of *in personam* jurisdiction.

In *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 79 L.Ed. 2d 790, 104 S.Ct. 1473 (1984), also a libel action, the defendant's connection with the forum state consisted of the sale of some 10,000 to 15,000 copies of Hustler Magazine in that state each month. We take judicial notice that the dollar volume of these sales for one year would roughly equal the $520,000 earned by Burnham in North Carolina in 1984. The Court in *Keeton* drew the distinction between contacts sufficient to support jurisdiction when the cause of action arises out of defendant's activity being conducted in the forum state — sometimes referred to in the cases and literature as "specific jurisdiction" — and when the cause of action is unrelated to those activities giving rise to the claim — sometimes referred to as "general jurisdiction." The Court has indicated in other cases that "specific jurisdiction" requires a minimum contacts analysis, whereas "general jurisdiction" requires the heightened analysis of "continuous and systematic" general business contacts. *See generally, Helicopteros*, 466 U.S. 408, 80 L.Ed. 2d 404, 104 S.Ct. 1868 (1984). In this case the Court concluded that the alleged libelous material arose out of magazine sales in the forum state, and that the contacts were sufficient to support this "specific jurisdiction" over the defendant. The Court noted however that the sale of the 10,000 to 15,000 magazines each month "may not be so substantial as to support jurisdiction over a cause of action unrelated to those activities." 465 U.S. at 779, 79 L.Ed. at 801. The Court, in comparing these contacts with those in *Perkins*, stated:

In *Perkins,* the [defendant] corporation's mining opera-
tions, located in the Philippine Islands, were completely
halted during the Japanese occupation. The president, who
was also general manager and principal stockholder of the
company, returned to his home in Ohio where he carried on
"a continuous and systematic supervision of the necessarily
limited wartime activities of the company." 342 US, at 448, 96
L Ed 485, 72 S Ct 413, 47 Ohio Ops 216, 63 Ohio L Abs 146.
The company's files were kept in Ohio, several directors'
meetings were held there, substantial accounts were main-
tained in Ohio banks, and all key business decisions were
made in the State. Ibid. In those circumstances, Ohio was the
corporation's principal, if temporary, place of business so that
Ohio jurisdiction was proper even over a cause of action un-
related to the activities in the State.

*Id.* at fn. 11.

Finally, in *Helicopteros,* the defendant made purchases in
Texas totalling in excess of $4,000,000 (including approximately
80% of its helicopter fleet), negotiated the contract in that state,
and sent its pilots to Texas for training. The Court held, however,
that these contacts were not sufficient to subject the defendant to
*in personam* jurisdiction in that state pursuant to a wrongful
death action relating to a helicopter crash in South America.
These cases lead us to believe that the use of independent con-
tractors as sales representatives and the resultant $520,000 in
sales are not sufficient to satisfy the "continuous and systematic"
standard necessary for asserting *in personam* jurisdiction.

Based upon the reasoning set forth above, we conclude that
the due process clause requires more than the aggregate contacts
presented in evidence in this case. Thus, we find that the trial
court erred in denying defendant's motion to dismiss for lack of *in
personam* jurisdiction.

Reversed.

Judge EAGLES concurs.

Judge PHILLIPS dissents.

Judge PHILLIPS dissenting.

In my opinion the court below has *in personam* jurisdiction over the defendant and the order of the trial judge should be affirmed.