**SETRA OF NORTH AMERICA, INC., Plaintiff,**

v.

**MOTORCOACH FINANCIAL, INC., Defendant,**

v.

**DaimlerChrysler AG and EvoBus GMBH, Counterclaim Defendants.**

No. 102CV00428.

United States District Court, M.D. North Carolina.

Feb. 24, 2005.

Amie Flowers Carmack, Kennedy Covington Lobdell & Hickman, L.L.P., Raleigh, NC, Amy Pritchard Williams, Kennedy Covington Lobdell & Hickman, L.L.P., Charlotte, NC, for Plaintiff.

Lawrence P. Grayson, II, Moore & Van Allen, PLLC, Thomas D. Garlitz, Garlitz & Williamson, PLLC, Charlotte, NC, for Defendant.

George V. Hanna, III, Moore & Van Allen, Charlotte, NC, for Defendant and Claimant.

### ORDER

BEATY, District Judge.

On January 21, 2005, the United States Magistrate Judge's Recommendation was filed and notice was served on the parties pursuant to 28 U.S.C. § 636(b). No objections were received by the court within the time prescribed by the statute.

The court hereby adopts the Magistrate Judge's Recommendation.

**IT IS THEREFORE ORDERED** that the Additional Counterclaim Defendants' motions to dismiss [Pleading Nos. 38, 43, and 97] be **GRANTED** and that Defendant Motorcoach Financial's counterclaims against the Additional Counterclaim Defendants be dismissed.

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

SHARP, United States Magistrate Judge.

This matter comes before the Court on the Rule 12(b)(2) motions of Additional

Counterclaim Defendants DaimlerChrysler AG ("DCAG") and EvoBus GmbH ("Evo-Bus") to dismiss the counterclaims brought against them by Counterclaim Plaintiff Motorcoach Financial, Inc. ("MFI") for lack of personal jurisdiction. (Pleading Nos. 38, 43, 97.) The motions have been fully briefed, and the parties were heard in oral argument on November 29, 2004. The motions are ready for a ruling.

### Procedural History

Plaintiff Setra of North America, Inc. ("Setra") filed a verified complaint against Defendant MFI on May 8, 2002 in Guilford County Superior Court, alleging claims of breach of contract, constructive trust, resulting trust, conversion, breach of fiduciary duty, and unfair and deceptive trade practices. On May 31, 2002, MFI removed the case to this Court. On July 8, 2002, MFI filed a verified answer and counterclaims of breach of contract, unjust enrichment, promissory estoppel, and unfair and deceptive trade practices against Setra. Prior to Setra's reply to the counterclaims, MFI filed a first amended answer and counterclaims of breach of contract, unjust enrichment, promissory estoppel, unfair and deceptive trade practices against Setra and two Additional Counterclaim Defendants, DCAG and EvoBus (both German corporations). MFI asserted a fifth counterclaim of breach of guaranty against DCAG and EvoBus.[1] On August 22, 2002, Setra replied to MFI's amended counterclaims.[2]

In late 2002, DCAG and EvoBus were served with summons and MFI's amended counterclaims in Germany pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters. On February 3, 2003, DCAG and EvoBus filed the instant motions to dismiss for lack of personal jurisdiction. In its Initial Pretrial Conference Memorandum and Order issued on December 2, 2003, the Court allowed the parties until March 24, 2004 to conduct discovery on the limited issue of jurisdiction. The Court ordered that general discovery proceed notwithstanding the unresolved issue of jurisdiction over DCAG and EvoBus. On April 28, 2004, DCAG and EvoBus renewed their motions to dismiss, and on June 15, 2004, filed supplemental briefs in support of their renewed motions.

### Background Facts

Setra is a Maine corporation with its principal place of business in Greensboro, North Carolina. (Pleading No. 1, Compl. ¶ 1.) Setra is engaged in the business of selling and servicing new and used motorcoaches. (Pleading No. 40, Patrick Scully[3] Aff. ¶ 9.) Setra is a wholly-owned subsidiary of EvoBus, a German limited liability company that manufactures the motorcoaches Setra purchases and imports into North America. (Scully Aff. ¶ 3; Pleading No. 42, Arist von Dehn[4] Aff. ¶ 3.) In turn, EvoBus is a wholly-owned subsidiary of DCAG, a German public stock company. (von Dehn Aff. ¶ 3.) MFI is a Pennsylvania corporation with its principal place of business in Connecticut. (Compl. ¶ 2; Pleading No. 18, First Am. Answer ¶ 2.) MFI leases motorcoaches to high-risk lessees in

---

1. On April 9, 2004, MFI filed a supplemental counterclaim, asserting another claim of unfair and deceptive trade practices against Setra.

2. On February 17, 2004, Setra filed an amended reply to MFI's counterclaims, asserting additional affirmative defenses.

3. During the time relevant to this lawsuit, Patrick Scully was the President and CEO of Setra. (Scully Aff. ¶ 2.)

4. During the time relevant to this lawsuit, Arist von Dehn was a Director of EvoBus. (von Dehn Aff. ¶ 2.)

an attempt to eventually sell the lease accounts to other lenders.

The underlying claims in this case arise out of a course of dealings between Setra and MFI. In early 2001, Setra and MFI entered into an arrangement through which certain high-risk buyers could purchase Setra motorcoaches. Setra found buyers who, upon satisfying certain minimum credit requirements, would enter into a financing lease with MFI, with MFI as the title holder and Setra as the first lienholder of the motorcoach. MFI did not advance any funds to either Setra or the buyers; rather, MFI collected the monthly lease payments from the buyers and forwarded those payments, minus a service fee, to Setra. In turn, Setra agreed to reimburse MFI for its business expenses and to pay MFI various fees for services provided. In the event of default, Setra would repossess the motorcoach in question and pursue the guarantors for any deficiency. *See, generally,* Compl. ¶¶ 5–8; First Am. Countercl. ¶¶ 7–19.

The relationship between the parties deteriorated in early 2002. MFI alleged that Setra refused to pay MFI certain monies that were due MFI. As a result, MFI began withholding, at least in part, monthly lease payments from Setra. (Compl. ¶¶ 9–11; First Am. Countercl. ¶¶ 20–23.) Setra responded with this lawsuit.

MFI counterclaimed against Setra and two additional counterclaim defendants, DCAG and EvoBus. The counterclaims against DCAG and EvoBus are based on a letter written in June 2000 from officers of EvoBus to Raymond Murphy, the president of Evergreen Financial Services, LLC ("Evergreen")(now defunct) and current president of MFI. The sixth paragraph of the letter contains the following language: "DaimlerChrysler AG guarantees any liabilities undertaken by Setra including all of the obligations of Setra with respect to any remarketing or re-course agreements between Setra and Evergreen Financial Services, LLC." (Pleading No. 59, Def.'s Ver. Resp. to Mot. to Dismiss, Ex. A.) MFI contends that in January 2002, agents of EvoBus and Setra represented to Murphy that the so-called guaranty letter would apply to the arrangement between Setra and MFI. *Id.,* Ex. B. Thus, MFI asserts that DCAG and EvoBus are guarantors of Setra's obligations to MFI in this lawsuit.

### Jurisdictional Facts Relating to EvoBus

EvoBus is a German limited liability company headquartered in Stuttgart. (von Dehn Aff. ¶ 3.) Although it manufactures "Setra" brand motorcoaches, EvoBus does not import, distribute or advertise the motorcoaches or component parts in North America. *Id.* ¶ 6. Rather, Setra takes title to the motorcoaches at EvoBus' factory in Ulm, Germany, and arranges shipment of the motorcoaches to the United States. *Id.* ¶ 7. Setra then sells and services the motorcoaches in North America. *Id.* EvoBus and Setra have formally maintained their separate corporate identities, and keep their business records and tax returns separate. *Id.* ¶ 5.

According to the undisputed evidence of record, EvoBus has never been a resident of North Carolina, nor has it ever been licensed, registered or authorized to do business in North Carolina. Further, EvoBus has never owned or leased any property in North Carolina or paid taxes in North Carolina. (von Dehn Aff. ¶ 4.)

However, there is evidence of regular business contacts and interaction between EvoBus and Setra. EvoBus employees have visited Setra's offices in Greensboro, North Carolina on approximately 13 occasions:

- A Mr. Schwoebel visited Setra in December 2000, July 2001, December

2001 and April 2002 to conduct a semi-annual review and audit of Setra's books and records.

- A Mr. Mack visited Setra in December 2002, July 2003 and December 2003 to conduct a semi-annual review of Setra's books and records.
- Mr. von Dehn visited Setra in October and December 2001 to review issues relating to purchasers who had financed their motorcoaches through Evergreen.
- Mr. von Dehn and Freidrich Huemer visited Setra in January 2002 to meet with Raymond Murphy, the president of MFI.
- Joerg Losemann visited Setra in July 2002 to assist in setting up a newsletter and other marketing materials.
- Mr. Wolfgang Diez, the CEO of Evo-Bus, toured Setra's offices and met with Setra's CEO in August 2002.
- Ms. Maertlbauer visited Setra in May 2004 to conduct a general business and accounting review.

In addition, during discovery, Setra produced over 3500 pages of emails exchanged between employees of EvoBus and employees of Setra. The emails submitted to the Court by MFI are concerned with topics such as proposed testing of Setra motorcoaches by a Canadian safety organization, an event unveiling a new motorcoach, warranty issues, and advertising and marketing materials. (Def.'s Resp. to Renewed Mot. to Dismiss of EvoBus at 5, Ex. C.)

**5.** During the time relevant to this lawsuit, Michael Jacobi was an Associate General Counsel (Legal Affairs Corporate) for DCAG. (Jacobi Aff. ¶ 2.)

**6.** Prior to his position as CEO of DCCB, Strecker was Director of Strategic Planning for EvoBus. (Strecker Aff. ¶ 2.)

*Jurisdictional Facts Relating to DCAG*

DCAG is a German public stock company incorporated in Stuttgart, Germany. DCAG has never been a resident of North Carolina, nor has it ever been licensed or registered to do business in North Carolina. DCAG has never conducted any sales, advertising or other business activities nor had any officers, employees or agents stationed in North Carolina. (Pleading No. 45, Michael Jacobi [5] Aff. ¶ 4.)

Since June 2002, Andreas Strecker, the CEO of DaimlerChrysler Commercial Buses North America Holdings, LLC ("DCCB"),[6, 7] has lived in North Carolina and maintained an office at Setra's headquarters in Greensboro. Strecker avers that he spends half of his time in North Carolina and the other half of the time traveling on business. During the time he is in North Carolina, Strecker works on the business of DCCB rather than that of Setra directly. (Pleading No. 41, Andreas Strecker Aff. ¶¶ 2–4.)

From June 2002 until April 2003, Strecker used a business card which described the company he represented as "DaimlerChrysler AG" and listed its address as that of Setra in Greensboro, North Carolina. (Def.'s Resp. to Mot. to Dismiss, Ex. C.) Strecker avers that use of the name "DaimlerChrysler AG" on his card was inappropriate and was discontinued for that reason. Strecker alleges that DCAG's corporate name was used on the card because "DaimlerChrysler Commercial Buses North America" was too long a

**7.** DCCB is a wholly-owned subsidiary of DaimlerChrysler North America Holding Corporation, which, in turn, is a wholly-owned subsidiary of DCAG. (Pleading No. 68, Strecker Supp. Aff. ¶¶ 2, 5.) DCCB has oversight responsibility over Thomas Dennis Buses (a subsidiary of DCCB), Orion Bus Industries (another subsidiary of DCCB) and Setra. (Strecker Aff. ¶ 4.)

name to fit on the card. (Strecker Supp. Aff. ¶ 8.)

### Discussion

■ When the Court's exercise of personal jurisdiction is challenged by a motion to dismiss under Rule 12(b)(2), and the Court, as here, has considered evidence on the matter beyond the pleadings, the burden falls upon the party asserting jurisdiction, here MFI, to demonstrate the existence of personal jurisdiction by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989).

■ In order for a district court to exercise personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized by the forum state's long-arm statute; and (2) such exercise must also comport with the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. *Christian Science Bd. Of Dir. Of The First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir.2001). North Carolina's long-arm statute, N.C. Gen.Stat. § 1–75.4, extends its reach to the outer limits of due process. *Hanes Cos., Inc. v. Ronson*, 712 F.Supp. 1223, 1226 (M.D.N.C.1988). Thus, the Court's inquiry collapses into a determination of whether asserting personal jurisdiction is permissible under the Due Process Clause. *Id.*

Under the Due Process Clause, personal jurisdiction over a non-resident defendant is proper only if (1) the defendant has purpose fully established "minimum contacts" with North Carolina; and (2) the exercise of jurisdiction would comport with traditional notions of "fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The "minimum contacts" required by due process differ depending on whether "general" or "specific" personal jurisdiction is asserted. General jurisdiction exists when the lawsuit does not arise out of the defendant's contacts with the forum state, but rather the defendant had "continuous and systematic" contacts with the forum. Specific jurisdiction exists when the lawsuit arises out of the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Tubular Textile Mach. v. Formosa Dyeing & Finishing, Inc.*, No. 4:96CV00391, 1997 WL 33150812 (M.D.N.C. Jan. 29, 1997)(Beaty, J.)(unpublished opinion). In this case, MFI has conceded that this Court does not have specific jurisdiction over DCAG and EvoBus. Thus, the Court will limit its discussion to general jurisdiction.

In order to establish that this Court has general jurisdiction over DCAG and Evo-Bus, MFI must prove that DCAG and EvoBus had "continuous and systematic" contacts with North Carolina. *Helicopteros Nacionales*, 466 U.S. at 414–16, 104 S.Ct. 1868. When general jurisdiction is at issue, the requisite "minimum contacts" between the non-resident and the forum state are "fairly extensive." *Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir.1971). " 'Conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to [general jurisdiction].' " *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir.1993)(quoting *Int'l Shoe Co.*, 326 U.S. at 317, 66 S.Ct. 154). General jurisdiction over a corporate defendant is proper "[o]nly when the continuous corporate operation within a state is thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Id.*

## A. General Jurisdiction Over EvoBus

MFI asserts that EvoBus has maintained "continuous and systematic" contacts with North Carolina, and thus, that this Court may properly exercise general jurisdiction over EvoBus. As examples of continuous corporate activities, MFI relies on (1) 13 visits to North Carolina by various EvoBus employees; (2) 3500 pages of emails between employees of EvoBus and employees of Setra; and (3) the presence of Andreas Strecker, a former EvoBus employee, at Setra's headquarters.

■ The Court finds that EvoBus' contacts with North Carolina fall far short of the "continuous and systematic" contacts necessary to support the Court's exercise of personal jurisdiction over EvoBus. Isolated visits by EvoBus employees to Setra's headquarters, by their very nature, are not "continuous and systematic" contacts. *See Landoil Resources Corp. v. Alexander & Alexander,* 918 F.2d 1039, 1045–46 (2d Cir.1990)(thirteen short business trips to forum state over 18 months not "continuous and systematic"); *Cascade Steel Rolling Mills, Inc. v. C. Itoh & Co.,* 499 F.Supp. 829, 841 (D.Or.1980)(denying jurisdiction over Japanese steel company whose employees made isolated visits to the United States).

While the email correspondence between EvoBus and Setra was quite frequent and regular, the nature of the correspondence is not sufficient to warrant the Court's exercise of general jurisdiction. The emails MFI has provided to the Court contain discussions about advertising and marketing materials, warranty issues, the unveiling of a new motorcoach, and proposed safety testing of motorcoaches, i.e., routine business discussions between a parent and a subsidiary. Significantly, the emails do not contain contracts for the sale of motorcoaches or any other kind of commercial transactions or agreements. *See Metro. Life Ins. Co. v.*

*Robertson–Ceco Corp.,* 84 F.3d 560, 572 (2d Cir.1996) (noting that extensive mail order and telephone sales could support general jurisdiction if sufficiently "continuous and systematic"); *Noonan v. Winston Co.,* 135 F.3d 85, 92–93 (1st Cir.1998)(nonresident company's regular and frequent telephone calls, faxes and letters to resident company to solicit business insufficient to establish general jurisdiction).

Finally, the presence of Andy Strecker, a *former* employee of EvoBus, at Setra's headquarters, who was performing work for DCCB and not EvoBus, does not even constitute a contact between EvoBus and North Carolina.

■ Furthermore, the Court notes that it is settled law that the mere presence of a subsidiary in North Carolina, standing alone, is not enough to impute personal jurisdiction over the parent corporation. *Ash v. Burnham Corp.,* 80 N.C.App. 459, 462, 343 S.E.2d 2, 4 (1986). To impute Setra's presence in North Carolina to EvoBus, MFI must pierce the corporate veil and establish that EvoBus has wholly ignored the separate status of Setra and that the separate existence of the two companies is a mere sham. *Smith v. S & S Dundalk Eng. Works, Ltd.,* 139 F.Supp.2d 610, 620 (D.N.J.2001). Here, there is no evidence that Setra's separate corporate identity is a sham. To the contrary, the undisputed evidence is that Setra keeps its business records and tax returns separate from those of EvoBus, and that EvoBus does not direct Setra's day-to-day activities. (Scully Aff. ¶¶ 4–6.) Furthermore, Setra is engaged in substantial corporate activities which have little or no relation to EvoBus, such as servicing buses and buying and selling used buses. *Id.* ¶ 9. Accordingly, Setra's mere presence in North Carolina cannot be imputed to its parent company, Evobus, for purposes of personal jurisdictional.

Given the Supreme Court's admonition that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field," *Asahi Metal Indus. Co. v.Super. Ct. of Cal.,* 480 U.S. 102, 115, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), this Court concludes that sufficient minimum contacts between EvoBus and North Carolina have not been shown. The Court may not properly exercise personal jurisdiction over EvoBus in this case.

### B. General Jurisdiction Over DCAG

■ MFI similarly asserts that DCAG has maintained "systematic and continuous" contacts with North Carolina, relying on (1) various references to "Daimler-Chrysler" on Setra's website and certain promotional materials; (2) Strecker's business card which lists "DaimlerChrysler AG" as the company he represents; and (3) lawsuits in other courts in the United States in which DCAG is a party.

The Court is not persuaded that the evidence upon which MFI relies amounts even to contacts between DCAG and North Carolina, much less "continuous and systematic" contacts. According to the undisputed evidence of record, the website and promotional materials refer to "DaimlerChrysler" the brand name or other subsidiaries of DCAG, and not to DCAG itself. (Strecker Supp. Aff. ¶¶ 8–12, 16–18.) In regards to Strecker's business card, there is no evidence in the record that anyone at DCAG knew about Strecker's use of the card or in any way approved its use. Without such knowledge, Strecker's use of the card cannot be imputed to DCAG. *Burger King Corp.,* 471 U.S. at 475, 105 S.Ct. 2174 (a defendant will not be haled into a jurisdiction on the basis of the unilateral activity of a third person)(citing *Helicopteros,* 466 U.S. at 417, 104 S.Ct. 1868).

In addition, MFI points to numerous lawsuits throughout the United States in which DCAG is a party. *See, e.g., DaimlerChrysler AG v. Bloom,* 315 F.3d 932 (8th Cir.2003); *Daimlerchrysler AG v. Feuling Advanced Techs., Inc.,* 276 F.Supp.2d 1054 (S.D.Cal.2003). MFI argues that DCAG is well accustomed to litigation in American courts and does not contest personal jurisdiction when it suits DCAG's purposes. But MFI fails to realize that being a party to lawsuits in other states cannot be considered "continuous or systematic" activity in North Carolina. DCAG may have contacts with other states that are not present in North Carolina. *In Re New Motor Vehicles Canadian Export Antitrust Litigation,* 307 F.Supp.2d 145, 151 (D.Me.2004); *see also United States v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, 619–20 (1st Cir.2001)(even in combination with other contacts, being an appellant in a lawsuit in an American court insufficient to assert jurisdiction).

Finally, MFI argues that it is inequitable for DCAG, the seventh largest company in the world, to profit from doing business on a worldwide basis through its subsidiaries, and then shield itself from personal jurisdiction by hiding behind its subsidiaries. MFI emphasizes that DCAG has multiple subsidiaries doing its business in North Carolina, including Setra.

MFI relies heavily on a Texas case to support its argument, *Daimler–Benz Aktiengesellschaft v. Olson,* 21 S.W.3d 707 (Tex.App.2000), *cert. denied,* 535 U.S. 1077, 122 S.Ct. 1960, 152 L.Ed.2d 1021 (2002). In *Olson,* the court analyzed the corporate structure of Daimler–Benz AG ("DBAG"), the company which eventually merged with Chrysler Corporation in 1998 to form DCAG, to determine if DBAG had sufficient contacts with Texas to warrant the court's exercise of personal jurisdiction.

The Court concluded that DBAG was "a company devoted to selling its cars nationwide, including in Texas." 21 S.W.3d at 722. To accomplish that goal, DBAG "established subsidiaries in important markets around the globe." *Id.* Although DBAG and its North American subsidiary "observe[d] corporate formalities," the subsidiary "essentially connect[ed] DBAG to markets in the U.S., including Texas." *Id.* Thus, in the Texas court's view, DBAG and its subsidiary formed "a functional whole in promoting and marketing vehicles in Texas." *Id.* MFI claims that DCAG follows the same business model as DBAG, and thus, that the reasoning in *Olson* should fully apply here.

The Court is not persuaded by the reasoning in *Olson,* as it is distinguishable on several significant grounds. First, in Texas, the burden was on DBAG to negate "all bases of personal jurisdiction." *Id.* at 715. In direct contrast, it is MFI who bears the burden in North Carolina of demonstrating by a preponderance of the evidence that personal jurisdiction over DCAG is proper. Second, the court in Texas found as a matter of judicial admission that DBAG had established business relationships and business operations in Texas based on DBAG's filings in another case before a Texas federal district court. *Id.* at 720. Third, the plaintiffs submitted extensive evidence that DBAG controlled nearly every aspect of its subsidiary's business operations, including financing, purchasing, prices, stock quantities, advertising and warranty procedures. *Id.* at 722–24. Here, the Court cannot and will not merely assume that the same business structure exists between DCAG and Setra, years later and post-merger. The unchallenged evidence of record is that Setra's day-to-day activities, including the pricing of motorcoaches, are *not* controlled by EvoBus or DCAG. (Scully Aff. ¶¶ 4–6; von Dehn Aff. ¶¶ 5–7; Jacobi Aff. ¶¶ 7–8). Notably, MFI provides no citation to the rec-

ord to support its naked assertion that "DaimlerChrysler AG continued to follow the Daimler–Benz business model after the merger." (Def.'s Resp. to Renewed Mot. to Dismiss at 5.)

The bottom line in any "alter ego" or "veil piercing" inquiry is whether separate corporate identities are maintained. Here, the Court finds that they are so maintained, and that personal jurisdiction over DCAG is not proper in this case. *See In Re New Motor Vehicles,* 307 F.Supp.2d at 153–54 n. 6 (finding no general jurisdiction over Daimler Canada despite argument by the plaintiff that the economic realities of the intricate corporate structure of the DaimlerChrysler group demand treating the activities of the parent and its subsidiaries as unified action).

### Conclusion

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Additional Counterclaim Defendants' motions to dismiss (Pleading Nos. 38, 43, 97) be granted, and that MFI's counterclaims against the Additional Counterclaim Defendants be dismissed.