IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-804

Filed 7 May 2025

Mecklenburg County, No. 23CVS003268-590

GLORIA CARTER, Plaintiff,

v.

HOME2 SUITES BY HILTON CHARLOTTE I-77 SOUTH, and HILTON WORLDWIDE HOLDINGS, INC., Defendants.

Appeal by defendant from order entered 9 May 2024 by Judge Donnie Hoover in Mecklenburg County Superior Court. Heard in the Court of Appeals 26 February 2025.

> *Maxwell & Price, LLP, by Amanda Price, Esq., for Plaintiff-Appellee.*
>
> *Robinson Gooding Law, by William C. Robinson and Dorothy M. Gooding, for Defendant-Appellant.*

COLLINS, Judge.

Defendant Hilton Worldwide Holdings, Inc., appeals from the trial court's order denying its Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. Hilton Worldwide argues that North Carolina's long-arm statute does not authorize personal jurisdiction over it, and that the exercise of personal jurisdiction over it would violate due process. We agree that the exercise of personal jurisdiction over Hilton Worldwide would violate due process, and we reverse the trial court's order.

## I.    Background

Plaintiff Gloria Carter filed a verified complaint on 17 February 2023 against Home2 Suites by Hilton Charlotte I-77 South and Hilton Worldwide for wrongful eviction, breach of contract, and illegal sales tax allegedly arising from her stay at Home2 Suites.  Plaintiff alleged that the trial court had jurisdiction "because all of the transactions and occurrences happened in North Carolina and by virtue of NC Code § 11-921" and "because the Defendant is a business incorporated in North Carolina."  An unverified, un-file-stamped, and un-dated "Amendment to Complaint" appears in the record which reads in its entirety,

> Pursuant to Rule 15 of North Carolina Rules of Civil Procedure, Plaintiff moves to add TWC Charlotte II LLC as a Defendant in the proceedings and to amend the original complaint to reflect "Hilton Worldwide Holdings, Inc. is a corporation incorporated in Delaware and doing business in North Carolina[.]"

Hilton Worldwide filed a motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(2) contesting personal jurisdiction.  Hilton Worldwide attached to its motion a sworn affidavit from its Vice President, James O. Smith, in which he averred as follows:

> 3. [Home2 Suites] . . . is independently owned and operated by TWC Charlotte II LLC, pursuant to the Franchise Agreement attached as **Exhibit A**.

> 4. [Hilton Worldwide] is the parent holding company of the Hilton hotel and hospitality business.  [Hilton Worldwide] is incorporated in Delaware and headquartered in Virginia.  [Hilton Worldwide] has no employees and is the

issuer of common stock listed for trading on the New York Stock Exchange.

5. [Hilton Worldwide] is not registered or licensed to do business in the state of North Carolina.

6. [Hilton Worldwide] does not hold title to or lease any real property in the state of North Carolina.

7. [Hilton Worldwide] is not a party to any franchise agreement for any hotel or resort located in the state of North Carolina.

8. [Hilton Worldwide] is not a party to any agreement related to [Home2 Suites].

9. At no time has [Hilton Worldwide] owned, operated, managed, or controlled the day-to-day operations of [Home2 Suites].

10. At no time has [Hilton Worldwide] employed the personnel working at [Home2 Suites] or controlled or supervised the staff at [Home2 Suites]

11. [Hilton Worldwide] has never held title to or leased the real property associated with [Home2 Suites].

12. [Hilton Worldwide] does not control nor operate [Home2 Suites'] facilities, systems, or equipment in any way.

Attached to Smith's affidavit was the Franchise Agreement referenced in the affidavit as Exhibit A. The Franchise Agreement between Hilton Franchise Holding LLC, as Franchisor, and TWC Charlotte II LLC, as Franchisee, granted TWC Charlotte a license to operate Home2 Suites and outlined the roles and responsibilities of the parties to the agreement. Hilton Worldwide is not a party to the Franchise Agreement.

Plaintiff filed an unverified response to Hilton Worldwide's motion to dismiss and did not submit any affidavits. After the hearing, the trial court entered an order denying Hilton Worldwide's motion, finding as follows:

> 3. Hilton Worldwide [] is the parent holding company of the Hilton hotel and hospitality business.
>
> 4. Hilton Worldwide [] is incorporated in Delaware and headquartered in Virginia.
>
> 5. Hilton Worldwide [] has no employees.
>
> 6. Hilton Worldwide [] is not registered or licensed to do business in the State of North Carolina.
>
> 7. Hilton Worldwide [] does not hold title to or lease any real property in the State of North Carolina.
>
> 8. TWC Charlotte [] owns and operates a hotel under the trade name "Home2 Suites []" . . . .
>
> 9. TWC Charlotte [] operates the "Home2 Suites []" pursuant to the Franchise Agreement between Hilton Franchise [] and TWC Charlotte [].
>
> 10. The Franchise Agreement is attached as Exhibit A to the Affidavit of James O. Smith.
>
> 11. Hilton Franchise [] is defined as "we," "us," "our" or "Franchisor" in the Franchise Agreement.
>
> 12. Hilton Franchise [] is an Affiliate of Hilton Worldwide [].
>
> 13. Hilton Worldwide [] is not a party to the Franchise Agreement between Hilton Franchise [] and TWC Charlotte [].
>
> 14. Hilton Worldwide [] does not own or lease the real property associated with the Home2 Suites [].

15. Plaintiff Gloria Carter alleges that she was wrongfully evicted from the Home2 Suites [].

16. Plaintiff Gloria Carter's claims arise out of her use of the Reservation System.

17. Pursuant to the Franchise Agreement, TWC Charlotte [] was required to use the Reservation System when operating Home2 Suites [].

18. Pursuant to a non-sworn or attested to document with the words "opencorporates" shown by Plaintiff's counsel at the hearing, Hilton Worldwide [] is the "Controlling Company" of Hilton Franchise [].

Based upon its findings, the trial court concluded:

1. The Court has grounds for personal jurisdiction over Hilton Worldwide [] under the North Carolina long arm statute G.S. § 1-75.4.

2. Hilton Worldwide [] has sufficient minimum contacts with the State of North Carolina and the Court's exercise of jurisdiction over Hilton Worldwide [] satisfies the Due Process Clause of the United States Constitution.

Hilton Worldwide appealed to this Court.

## II. Discussion

### A. Appellate Jurisdiction

We first address our jurisdiction to hear this appeal. "An order denying a motion to dismiss is interlocutory because it leaves the matter for further action by the trial court." *Semelka v. Univ. of N.C.*, 289 N.C. App. 198, 207 (2023) (citation omitted). "Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Bartlett v. Est. of Burke,* 285 N.C. App. 249, 254 (2022) (citation

omitted). "Our General Statutes recognize a limited right to an immediate appeal from an interlocutory order denying a motion to dismiss for lack of personal jurisdiction." *Id*. at 255 (citing N.C. Gen. Stat. § 1-277(b) (interested parties may immediately appeal adverse rulings as to the jurisdiction of the court over the person or property of defendant)).

This right of immediate appeal of an adverse personal jurisdiction ruling is limited, however, to "minimum contacts" rulings—that is, rulings on "whether the court has power . . . to require the defendant to come into court to adjudicate the claim," pursuant to Rule 12(b)(2), as opposed to rulings on the sufficiency of service pursuant to Rule 12(b)(5) or the sufficiency of process pursuant to Rule 12(b)(4). *Love v. Moore*, 305 N.C. 575, 579 (1982). As the issue before us is whether Hilton Worldwide has sufficient minimum contacts with North Carolina to authorize the trial court's exercise of personal jurisdiction, this appeal is properly before this Court.

**B. Standard of Review**

"The standard of review of an order determining personal jurisdiction is whether the findings of fact by the trial court are supported by competent evidence in the record." *Bell v. Mozley*, 216 N.C. App. 540, 543 (2011) (cleaned up). "We review de novo the issue of whether the trial court's findings of fact support its conclusion of law that the court has personal jurisdiction over defendant." *Id.* (citation omitted).

Where a defendant supplements its "motion to dismiss with an affidavit or other supporting evidence," the allegations in the plaintiff's complaint cannot "be

taken as true or controlling and [the] plaintiff cannot rest on the allegations of the complaint." *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693 (2005) (cleaned up). Further, if a plaintiff offers no competing affidavit or other evidence, "to determine whether there is evidence to support an exercise of personal jurisdiction, the court then considers (1) any allegations in the complaint that are not controverted by the defendant's affidavit and (2) all facts in the affidavit which are uncontroverted because of the plaintiff's failure to offer evidence[.]" *Id.* at 693-94 (parentheses and citations omitted). "The burden is upon the plaintiff to establish by a preponderance of the evidence that personal jurisdiction exists." *Sherlock v. Sherlock*, 143 N.C. App. 300, 301 (2001) (citations omitted).

Plaintiff concedes that Hilton Worldwide "support[ed] its Motion to Dismiss with the Affidavit of James O. Smith, and Plaintiff fil[ed] no affidavit, sworn testimony, or evidence in response." Plaintiff further concedes that "the allegations of Plaintiff's Complaint are not taken as 'true or controlling' and Plaintiff may not rest on the allegations of her Complaint." Plaintiff essentially argues, however, that the Franchise Agreement is sufficient evidence to establish the trial court's personal jurisdiction over Hilton Worldwide.

## C. Findings of Fact

Hilton Worldwide first argues that findings of fact 16, 17, and 18 are not supported by the evidence. We address each finding in turn.

Finding of fact 16 states, "Plaintiff Gloria Carter's claims arise out of her use

of the Reservation System." Nowhere in Plaintiff's complaint does she reference a "Reservation System" or allege that her claims arose out of using a "Reservation System." Further, nowhere in her complaint does she tie a "Reservation System" to Hilton Worldwide. Plaintiff concedes that her complaint does not reference a "Reservation System" but argues that "[t]he suit does not need to mention the Reservation System or Service, as it is referenced Franchise Agreement (sic) because it is the only means by which the Franchisee is able to make reservations."

The Franchise Agreement indicates that Hilton Franchise will provide TWC Charlotte with a "Reservation Service." However, the Franchise Agreement does not show how Plaintiff's claims arose from her use of the Reservation Service, nor does it indicate that Hilton Worldwide provided, controlled, managed, maintained, or operated this service. Additionally, as explained next, the Reservation Service is not the sole way for Home2 Suites to accept reservations. Accordingly, this finding of fact is not supported by the evidence and we will disregard it in our analysis.

Finding of fact 17 states, "Pursuant to the Franchise Agreement, TWC Charlotte [] was required to use the Reservation System when operating Home2 Suites []." Section 5.1.10 of the Franchise Agreement provides as follows:

> [TWC Charlotte must] participate in and use the Reservation Service, including any additions, enhancements, supplements or variants we develop or adopt, and honor and *give first priority* on available rooms to all confirmed reservations referred to [Home2 Suites] through the Reservation Service. The only reservation service or system you may use for outgoing reservations

referred by or from [Home2 Suites] to other Network Hotels will be the Reservation Service *or other reservation services we designate*[.]

(emphasis added).

Although, by the terms of the Franchise Agreement, Hilton Franchise requires TWC Charlotte to participate in and use the Reservation Service, the Franchise Agreement also contemplates that the Reservation Service is not the only method by which reservations may be made. TWC Charlotte must "give first priority" on available rooms to reservations referred to Home2 Suites through the Reservation Service, implying that some reservations will not be referred through the Reservation Service and will be given lesser priority. Furthermore, the Franchise Agreement specifically provides that Hilton Franchise may designate "other reservation services" to use for outgoing reservations referred by or from Home2 Suites to other Network Hotels. Accordingly, only to the extent that Hilton Franchise requires TWC Charlotte to use the Reservation Service as the way to accept reservations under certain conditions is this finding of fact supported by the evidence.

Finding of fact 18 states, "Pursuant to a non-sworn or attested to document with the words 'opencorporates' shown by Plaintiff's counsel at the hearing, Hilton Worldwide [] is the 'Controlling Company' of Hilton Franchise []." It is accurate that the record contains "a non-sworn or attested to document" with a screenshot of a web page displaying the title "opencorporates" and the description "The Open Database Of The Corporate World." The screen shot displays various fields of information

including "HILTON FRANCISE HOLDING LLC" and "Controlling Company HILTON WORLDWIDE HOLDINGS INC."

This finding of fact indicates that the "non-sworn or attested to document" was not admissible to controvert Hilton Worldwide's affidavit, and Plaintiff does not argue otherwise. Furthermore, this finding is merely a recitation of what the document indicates on its face and is not a substantive finding that Hilton Worldwide controls Hilton Franchise. We will therefore disregard this purported finding in our analysis. *See Lane v. Am. Nat'l Can Co.*, 181 N.C. App. 527, 531 (2007) ("This Court has long held that findings of fact must be more than a mere summarization or recitation of the evidence[.]") (citations omitted).

**D. Personal Jurisdiction**

"North Carolina applies a two-step analysis to determine whether a non-resident defendant is subject to *in personam* jurisdiction." *Bartlett*, 285 N.C. App. at 255 (citation omitted). First, North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4, must authorize jurisdiction. *Id.* Second, if the long-arm statute allows personal jurisdiction, the "exercise of [such] jurisdiction must not violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Id.* (quotation marks and citation omitted).

Plaintiff contends that N.C. Gen. Stat. § 1-75.4(1)(d), which confers personal jurisdiction "[i]n any action, whether the claim arises within or without this State, in which a claim is asserted against a party who . . . [i]s engaged in substantial activity

within this State," authorizes the exercise of personal jurisdiction over Hilton Worldwide. N.C. Gen. Stat. § 1-75.4(1)(d) (2023). N.C. Gen. Stat. § 1-75.4(1)(d) "grants the courts of North Carolina the opportunity to exercise jurisdiction over [a] defendant to the extent allowed by due process." *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676 (1977). "In other words, when evaluating the existence of personal jurisdiction pursuant to [N.C. Gen. Stat.] § 1-75.4(1)(d), the question of statutory authorization collapses into the question of whether the defendant has the minimum contacts with North Carolina necessary to meet the requirements of due process." *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 617 (2000) (cleaned up). Accordingly, we proceed directly to the due process inquiry.

Due process requires that a defendant "have certain minimum contacts" with this forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (citations omitted)*; see also Chadbourn, Inc. v. Katz*, 285 N.C. 700, 705 (1974) ("Unless a nonresident defendant has had 'minimum contacts' with the forum state, the state may not exercise jurisdiction over him."). Although courts "have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction," *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011), only the latter is at issue here.

Specific jurisdiction exists where "the controversy arises out of the defendant's contacts with the forum state[.]" *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C.

361, 366 (1986). It "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (quotation marks and citation omitted). Jurisdiction cannot be based on "a defendant's 'random, fortuitous, or attenuated' contacts with the forum state[.]" *Beem USA Limited-Liability Ltd. P'ship v. Grax Consulting LLC*, 373 N.C. 297, 303 (2020) (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (citation omitted)). Rather, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citation omitted). The determination of the existence of minimum contacts "depends upon the particular facts of each case." *Chadbourn*, 285 N.C. at 705 (citations omitted).

"[W]hen a subsidiary of a foreign corporation is carrying on business in a particular jurisdiction, the parent is not automatically subject to jurisdiction in the state." *Ash v. Burnham Corp.*, 80 N.C. App. 459, 462 (1986) (citing 4 Wright and Miller, Federal Practice and Procedure: Civil § 1069, at 255-56 (1969); *Mills, Inc. v. Transit Co.*, 265 N.C. 61 (1965)). "Thus, if the subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary." *Id.*; *accord Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925).

- 12 -

Here, the trial court's findings indicate that Hilton Worldwide is not incorporated in North Carolina, is not headquartered in North Carolina, has no employees in North Carolina (or elsewhere), is not registered or licensed to do business in North Carolina, does not hold title to or lease any real property in North Carolina, does not own or lease the real property associated with Home2 Suites, and is not a party to the Franchise Agreement between Hilton Franchise and TWC Charlotte pursuant to which TWC Charlotte independently owns and operates Home2 Suites.

Although the trial court also found that "Hilton Franchise [] is an Affiliate of Hilton Worldwide" and that "Hilton Worldwide [] is the parent holding company of the Hilton hotel and hospitality business," Hilton Worldwide as "the parent is not automatically subject to jurisdiction in the state." *Ash*, 80 N.C. App. at 462 (citations omitted). There are no findings of fact that would support a conclusion that Hilton Franchise, and by extension TWC Charlotte and Home2 Suites, are not "separate and independent" from Hilton Worldwide. *Id.* Furthermore, the Franchise Agreement does not indicate that Hilton Franchise, and by extension TWC Charlotte and Home2 Suites, are not "separate and independent" from Hilton Worldwide. *Id.* Accordingly, jurisdiction over Hilton Worldwide may not be acquired on the basis of any local activities of Hilton Franchise or, by extension, TWC Charlotte or Home2 Suites.

The findings of fact that are supported by competent evidence do not support a conclusion that Hilton Worldwide "ha[d] certain minimum contacts" with North

Carolina "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (citations omitted). Accordingly, the trial court erred by denying Hilton Worldwide's motion to dismiss.

## III. Conclusion

Because Plaintiff has failed to carry her burden to show that personal jurisdiction exists over Hilton Worldwide, the trial court's order denying Hilton Worldwide's Rule 12(b)(2) motion to dismiss is reversed.

REVERSED.

Judges ZACHARY and GORE concur.